STATE OF CONNECTICUT *vs.* SIDNEY ISAACSON.

STATE OF CONNECTICUT *vs.* ABRAHAM I. ISAACSON.

STATE OF CONNECTICUT *vs.* JOSEPH ISAACSON.

STATE OF CONNECTICUT *vs.* SAMUEL GREENBERG.

MALTBIE, C. J., HAINES, BANKS, AVERY and BROWN, Js.

Argued January 13th—decided March 22d, 1932.

*Benjamin L. Slade* and *Josiah H. Peck,* for the appellants (the accused).

*Abraham S. Ullman,* Assistant State's Attorney, with whom was *Irving Sweedler,* and, on the brief, *Samuel E. Hoyt,* State's Attorney, for the appellee (the State).

BROWN, J. The three defendants Isaacson are brothers and the defendant Greenberg is married to their sister. All four defendants were together in the town of Winchester on February 4th, 1931. In the early evening of that day they drove to Meriden in two automobiles and engaged in a prolonged search for the complainant Morasche. In their endeavors to find Morasche they made inquiries of a police officer, made several telephone calls, went to his home, inquired of neighbors, and drove to Waterbury, where they were informed he had gone. In all their inquiries they stated they desired to engage Morasche to play in an orchestra. Unsuccessful in all these efforts to find him, pursuant to information he had returned to Meriden, they left one automobile in Waterbury and all four defendants returned to Meriden in the other car at eleven-thirty p.m. After another unsuccessful attempt to find him by going to his home, Greenberg, by another telephone call, finally located Morasche at the Meriden Elks Club. Greenberg represented himself to be one Doran and stated that he had a message for Morasche from a Mrs. Carter of Winsted. He requested Morasche to meet him immediately at a designated point near the office of the Meriden Record, near the center of the city and where the streets are fairly well lighted.

Morasche left promptly for the appointed place and upon his arrival found Greenberg seated in an auto-

mobile. At this time the three Isaacsons were standing around the corner some thirty feet away concealed from the view of Morasche. As Morasche asked Greenberg for his claimed message, the Isaacson brothers suddenly and stealthily approached from the rear. One seized Morasche and pinioned his arms behind him. The others, assisted by Greenberg, who had meantime gotten out of the automobile, struck Morasche repeatedly. Morasche was then knocked to the ground, where he was hit, struck and kicked about the head, body and legs. Having completed this attack, the four defendants hurriedly fled from the scene, the defendant Sidney Isaacson in his haste leaving his hat lying in the street. During this affray the witness Marie Dubord was seated in an automobile a short distance away and viewed the entire occurrence.

When the accused had gone, Morasche proceeded to the Meriden police station with his clothing disarranged, blood issuing from his mouth and nose, his forehead cut, his eyes discolored and his jaw hanging to one side, and made immediate complaint to the officers there on duty. It was found that his jaw had sustained three distinct fractures, in consequence of which he was subsequently confined to the hospital, where he was later taken, for seventy-one days. The four accused were placed under arrest on or about February 7th, 1931, and on that occasion Greenberg stated that all four had gone to Meriden for the purpose of "beating up" Morasche.

The accused up to the time of the occurrence in question had been peaceable and law-abiding citizens of good reputation. Sidney and Joseph Isaacson had lived for many years in Winsted where they were conducting a general store; Abraham Isaacson had been a member of the New York Bar in Brooklyn, of eight

years' standing; and Greenberg, their brother-in-law, was twenty-eight years old, and also a resident of Winsted. Prior to her marriage to the latter, his wife, a sister of the other three accused, had known Morasche, a musician of Meriden, quite intimately. After Greenberg's marriage to her but before February 4th, 1931, he had discovered three letters which his wife had received from Morasche, which are the accuseds' Exhibits 1, 2 and 3 for identification. Prior to February 4th, 1931, Greenberg told the other three accused of these letters, and they also knew of the relations between their sister and Morasche.

The errors of the trial court complained of by the accused on these four appeals, based upon practically identical records, fall under two heads: first, in finding the first two conclusions reached, and second, in excluding certain evidence offered by the accused. The first of these conclusions is in short that the four accused conspired to injure Morasche; and the second, that in pursuance thereof they searched for him, inveigled him to meet them, and there assaulted him inflicting serious injuries. The perusal of the court's finding, which stands unchallenged upon these appeals and which is in substance recited in the foregoing statement of facts, clearly discloses that the facts expressly found, in conjunction with the reasonable inferences therefrom, amply and logically support the court's two conclusions complained of. In view of the obvious motive, the concerted and persistent efforts made to locate and contact the victim, and the methods employed in consummating the assault, all of which so appear, it is difficult to perceive how the court could have reasonably reached any different conclusions than it did. The first and second assignments of error are clearly without merit.

A majority of the rulings upon evidence complained

of, either relate to the question of the admissibility of Exhibits 1, 2 and 3 for identification, or of facts pertaining thereto, which the accused offered in evidence and the court excluded. The letters themselves which Greenberg had discovered among his wife's effects during the period already stated, were offered to show that Morasche and Greenberg's wife were continuing an alleged illicit relationship, claimed admissible (1) in support of the accuseds' contention that the sole purpose of their quest for Morasche was to ask him to desist therefrom, and (2) in corroboration of their further contention that Morasche tried to get the letters away from Greenberg, thus showing the former was the aggressor, that the latter acted solely in self-defense, and the other three accused merely to separate them. The establishing of this continuing illicit relationship would be of no probative force to sustain (1) above, for it would be at least equally if not more probably consistent with the State's contention of a premeditated punitive attack, than with the accuseds' of solely intended peaceful persuasion. Such evidence, even if relevant, was so remote as to be properly held inadmissible. *State* v. *Kelly*, 77 Conn. 266, 269, 58 Atl. 705. The question of whether it was so remote as to call for its exclusion was within the sound discretion of the trial court whose determination is not reversible except for a clear abuse of power. *Knox* v. *Binkoski*, 99 Conn. 582, 586, 122 Atl. 400. There was none such here. It was not further details of the illicit relationship disclosed by the letters, admittedly fully known to the accused, that "throw light on the nature of the common enterprise in which the accused were engaged," as argued in their brief, but rather their conduct on the night in question culminating in the concerted cruel beating of their persistently sought

and defenseless victim, climaxed by their precipitate flight immediately thereafter.

The only potential significance' of the claimed relationship under (2) must pertain to the possible reaction of Morasche when the letters in the possession of Greenberg were displayed to him. But the existence of an intimate relationship between the former and Mrs. Greenberg had appeared by other evidence, as the record shows, as had also the claimed "blackmailing" nature of one of the letters, and Morasche's authorship of all three. And a reading of the letters discloses that these three subjects cover the full scope of all therein that can be claimed as of importance in this connection. The letters if admitted, therefore, would have constituted cumulative evidence. The significant fact under the claim in question, was not the contents of the letters *per se,* but that Greenberg had them under circumstances such as would naturally lead Morasche to try to get them. Of the circumstances illuminating this fact, the accused had the full benefit. If the exclusion of the letters themselves deprived the accused of anything, it was therefore at the most of cumulative evidence and of trifling significance. And what has been said as to remoteness concerning (1) applies here also. The court's exclusion of the letters constituted no error.

These observations as to the admissibility of the letters themselves, apply with equal force to the several questions claimed by the accused as to how they were signed, in whose handwriting they were, how they were addressed, and when and where they were found. The first three of these questions were further objectionable as calling for a violation of the best evidence rule. The court's exclusion of all of these inquiries was correct and calls for no further discussion.

The exclusion of the question, "Who in the [Isaac-

son] family did you know more?" claimed by the accused on the cross-examination of Morasche, solely to affect his credibility upon his identification of them, was well within the court's discretion, and further, as put, the question was too inexplicit to evoke an answer of any value. The exclusion on the cross-examination of the same witness by counsel for one of the accused, of the inquiry whether he had previously received messages from Mrs. Carter as go-between for Mrs. Greenberg—counsel for other of the accused having previously brought out on cross-examination that Greenberg when he phoned the witness to meet him that night stated he had a message to deliver from Mrs. Carter—was correct. *State* v. *Smith,* 49 Conn. 376, 380. This fact, furthermore, was irrelevant and immaterial upon the issue here before the court, which was simply whether on this occasion a false and successful pretext was used by Greenberg.

The inquiry of the police captain Carroll, a witness for the State, on cross-examination, as to whether the police received a warrant for the arrest of one Samuel Isaacson together with these accused, was properly excluded. He might well have been jointly charged with the accused as an accessory under § 6562 of the General Statutes, though no one claimed that he was present at the assault. But aside from this, the proper question of this witness to effectuate the evident purpose of accuseds' counsel to attack Morasche's identification of his attackers would have been, what he said to the police when his complaint was made, rather than what the police or prosecuting officials thereafter did. The further inquiry of this witness as to whether Morasche told him of any relations with Mrs. Greenberg, was properly excluded for reasons already discussed in connection with the exclusion of the letters. The same is true of all of the questions excluded on

the direct examination of Mrs. Greenberg, and also of those on the direct examination of the accused Greenberg as to when he first suspected the relationship between his wife and Morasche, and as to whether it was his reading of the letters that caused him to seek out the latter. The further question by counsel for the accused in this connection, "Was it after you went to Atlantic City in the latter part of January, 1931, that you determined you ought to see Morasche and talk to him about his former relations with your wife?" was properly excluded for it was not only leading, but it assumed facts not in evidence. The questions of the accused Abraham Isaacson excluded by the court were either entirely immaterial or inadmissible for reasons already fully discussed.

So far as the record discloses, the inquiry of the accused Greenberg on redirect examination, after he had stated that he had taken the letters from his pocket and exhibited them to Morasche just before the mêlee occurred, as to what Morasche did then, was properly excluded. It was objected to on the ground that the same question had been asked before, whereupon the court remarked that the subject had been already covered and so excluded it. Since nothing appears in the record to indicate that the matter had not in fact been already covered, we accept the court's conclusion. The question was properly excluded for the sufficient reason stated. *State* v. *Mosca*, 90 Conn. 381, 390, 97 Atl. 340. The same is true concerning the questions asked of the witness Morasche on cross-examination about instructions given by him to his attorney as to allegations descriptive of the assault, set forth in the complaint of a civil action upon his behalf against these accused, which the court excluded on the same ground. This latter question might also have been properly excluded on the further

ground that it did not tend to contradict the witness' testimony, the only apparent purpose for which it was claimed.

It is unnecessary to discuss the court's denial of the accused Joseph Isaacson's motion to strike out all testimony of admissions by others of the accused made subsequent to the attack, as evidence of any facts so stated as against him, for this ruling is not included in the assignment of errors.

There is no error.

In this opinion the other judges concurred.