STATE OF CONNECTICUT *v.* PETER R. GAFFNEY
(13284)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and COVELLO, Js.

Argued November 2—decision released December 20, 1988

*Donald D. Dakers,* public defender, for the appellant (defendant).

*Mitchell S. Brody,* deputy assistant state's attorney, with whom, on the brief, was *Patrick Clifford,* assistant state's attorney, for the appellee (state).

CALLAHAN, J. The defendant was charged in a substitute information with the crimes of burglary in the first degree in violation of General Statutes § 53a-101 (a), kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A), attempted sexual assault in the first degree in violation of General Statutes §§ 53a-49 (a) and 53a-70 (a), sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (B) and robbery in the first degree in violation of General Statutes § 53a-134 (a) (3).[1]

---

[1] "[General Statutes] Sec. 53a-101. BURGLARY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and: (1) He is armed with explosives or a deadly weapon or dangerous instrument, or (2) in the course of committing the offense, he intentionally, knowingly or recklessly inflicts or attempts to inflict bodily injury on anyone."

"[General Statutes] Sec. 53a-92. KIDNAPPING IN THE FIRST DEGREE. (a) A person is guilty of kidnapping in the first degree when he abducts another person and when . . . (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually . . . ."

"[General Statutes] Sec. 53a-49. CRIMINAL ATTEMPT: SUFFICIENCY OF CONDUCT; RENUNCIATION AS DEFENSE. (a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for com-

The charges arose out of an incident that occurred on May 8, 1986, in Meriden in which the defendant, using a pretext, gained entry to the apartment of a female neighbor. After having been admitted to her apartment, he produced a knife and forced her to disrobe. He then gagged his victim, bound her to her bed and unsuccessfully attempted to have sexual intercourse with her. Thereafter, he searched the victim's apartment and took several hundred dollars from a desk drawer. After leaving his victim's apartment, the defendant fled, first to Chicago, and then to California where he voluntarily entered a hospital. He was later arrested and returned to Connecticut.

At his trial the defendant admitted the elements of the crimes charged. In his defense he produced evidence of, and relied upon, the affirmative defense of mental disease or defect provided by General Statutes

mission of the crime he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

"[General Statutes] Sec. 53a-70. SEXUAL ASSAULT IN THE FIRST DEGREE: CLASS B FELONY: ONE YEAR NOT SUSPENDABLE. (a) A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person."

"[General Statutes] Sec. 53a-72a. SEXUAL ASSAULT IN THE THIRD DEGREE: CLASS D FELONY. (a) A person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact . . . (B) by the threat of use of force against such other person or against a third person, which reasonably causes such person to fear physical injury to such person or a third person . . . ."

"[General Statutes] Sec. 53a-134. ROBBERY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . (3) uses or threatens the use of a dangerous instrument . . . ."

§ 53a-13.[2] A jury, however, convicted the defendant on all counts of the substitute information. The trial court subsequently imposed an effective sentence of forty-one years, suspended after twenty-nine years, to be followed by a period of probation of five years.

In his appeal, the defendant claims that the trial court erred when it allowed the state, during cross-examination of the defendant and during final argument to the jury, to substitute what he denominates as the "policeman at the elbow" test of insanity[3] for the statutory test of insanity provided by § 53a-13. The defendant's claim is without merit.

The principal issue at the defendant's trial was the volitional aspect of the insanity defense, that is, whether the defendant lacked substantial capacity, as a result of mental disease or defect, to control his conduct within the requirements of the law. See General Statutes § 53a-13. During cross-examination of the defendant, the state, in pursuing the issue of the defendant's alleged inability to control his conduct, asked him the question, "If there were six police officers sitting at the kitchen table playing poker, you think you would

[2] "[General Statutes] Sec. 53a-13. LACK OF CAPACITY DUE TO MENTAL DISEASE OR DEFECT AS AFFIRMATIVE DEFENSE. (a) In any prosecution for an offense, it shall be an affirmative defense that the defendant, at the time he committed the proscribed act or acts, lacked substantial capacity, as a result of mental disease or defect, either to appreciate the wrongfulness of his conduct or to control his conduct within the requirements of the law.

"(b) It shall not be a defense under this section if such mental disease or defect was proximately caused by the voluntary ingestion, inhalation or injection of intoxicating liquor or any drug or substance, or any combination thereof, unless such drug was prescribed for the defendant by a licensed practitioner, as defined in section 20-184a, and was used in accordance with the directions of such prescription.

"(c) As used in this section, the terms mental disease or defect do not include (1) an abnormality manifested only by repeated criminal or otherwise antisocial conduct or (2) pathological or compulsive gambling."

[3] We have been unable to find any reference to such a test for insanity in the cases or the literature concerning the subject.

have gone into that bedroom and tied [the victim] to the bed?" The defendant objected to the question as "irrelevant." The trial court overruled the defendant's objection and the state repeated essentially the same question. In response, the defendant initially replied that he was unable to answer such a hypothetical inquiry. After prodding by the state, however, the defendant observed that he "wanted to be arrested anyway," that he had "turned himself in" and that "[i]t didn't make any difference."

Thereafter, during summation, the defendant took exception to a portion of the state's final argument wherein the state apparently reflected on whether the defendant would have been able to control his conduct if there had been "six police officers sitting in the room when he entered [the victim's] apartment."[4] The trial court "overruled" the defendant's exception stating that "[i]t was part of the evidence. It's proper argument."

The defendant argues that § 53a-13, which provides in pertinent part that "it shall be an affirmative defense that the defendant, at the time he committed the proscribed act or acts, lacked *substantial* capacity, as a result of mental disease or defect, either to appreciate the wrongfulness of his conduct *or to control his conduct within the requirements of* the law" (emphasis added), is the exclusive test for the affirmative defense of insanity. He contends that the "policeman at the elbow" test, which he claims was suggested by the state in its hypothetical question and in its closing comments, and sanctioned by the court, differs from the exclusive statutory test set forth in § 53a-13 because that test

---

[4] The words quoted are a partial quote from the defendant's counsel when he took exception to the state's argument. Transcripts of the final arguments were not available at the time of oral argument and the best information we have indicates that the final arguments were not transcribed.

requires the jury to find that the defendant *totally* lacked the capacity to control his conduct within the requirements of the law.

The defendant is correct that the statutory test is exclusive. *State* v. *Toste,* 178 Conn. 626, 633, 424 A.2d 293 (1979). The record, however, fails to disclose how the hypothetical query by the state or the reference thereto in its final argument could possibly have been interpreted by the jury as delineating the test to be applied to its determination of whether the defendant had proved the affirmative defense of insanity. The transcript reveals that, after the defendant testified in support of the insanity defense, the state, on cross-examination, concentrated its attack on the claimed inability of the defendant to control his conduct. During the course of the state's questioning, the defendant acknowledged that on occasions in the past he had been able to suppress his sexual urges due to his concern for the consequences of his contemplated actions or out of fear of retribution. In allowing the hypothetical question complained of, the trial court, in keeping with that line of questioning, was obviously permitting the state to plumb the depths of the defendant's capacity to restrain himself under various circumstances. Such an inquiry was at least of some relevance to the defendant's ability to control his conduct within the requirements of the law, which is an integral facet of the statutory defense of insanity and was the central issue in the case. It would take a tortured reading of the record to construe the state's cross-examination as creating the "test" for insanity. Although the state, in its effort to make a point, hypothesized a rather extreme situation, the allowance of the hypothetical question posed by the state lay within the broad discretion afforded the trial court to determine the permissible scope of cross-examination. *United States* v. *Guillette,* 547 F.2d 743, 755 (2d Cir. 1976); *State* v. *Briggs,* 179

Conn. 328, 333–34, 426 A.2d 298 (1979), cert. denied, 447 U.S. 912, 100 S. Ct. 3000, 64 L. Ed. 2d 862 (1980); *State* v. *Amaral,* 179 Conn. 239, 244, 425 A.2d 1293 (1979); *Gurecki* v. *Johnson,* 175 Conn. 297, 298, 398 A.2d 311 (1978); *State* v. *Rose,* 168 Conn. 623, 636, 362 A.2d 813 (1975); 81 Am. Jur. 2d, Witness § 472.

Further, any danger that the jury might employ a test other than the statutory test when assessing the defendant's insanity defense was eliminated by the trial court's jury instructions. The trial court, in giving those instructions, never mentioned the hypothetical question propounded by the state nor did it allude to any test for insanity other than the statutory test. In addition, after it had specifically told the jurors that they were required to follow the court's instructions on the law, the trial court proceeded to instruct them on the correct statutory standard for insanity on at least eight occasions.[5] In the absence of some indication to the contrary, other than conjecture by the defendant, we are constrained to presume that the jurors followed the trial court's instructions in that regard. *State* v. *Williams,* 202 Conn. 349, 364, 521 A.2d 150 (1987); *State* v. *Barber,* 173 Conn. 153, 156, 376 A.2d 1108 (1977).

There is no error.

In this opinion the other justices concurred.

---

[5] In his brief, the defendant concedes that the trial court's charge was correct and properly limited to the statutory provisions. Further, the defendant never requested the trial court to instruct the jury to disregard the so-called "policeman at the elbow" test.