## STATE OF CONNECTICUT *v.* CHARLES ROGERS
### (13685)

Lavery, Spear and Hennessy, Js.

Argued October 23, 1995—officially released April 30, 1996

*David A. Bachman,* special public defender, for the appellant (defendant).

*Margaret Gaffney Radionovas,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Elpedio Vitale,* assistant state's attorney, for the appellee (state).

LAVERY, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and risk of injury to a child in violation of General Statutes § 53-21. On appeal, the defendant claims that the trial court improperly (1) permitted the state to inject the issue of the defendant's religious beliefs during his cross-examination, (2) permitted the state to pose questions to the defendant that required him to assume that he was guilty and (3) denied the defendant's request to inspect the psychiatric records of a prosecution witness. Because we conclude that the trial court improperly permitted the state to ask the defendant questions that required him to assume his guilt, we reverse the judgment of conviction and remand the case for a new trial.

The jury reasonably could have found the following facts. In March, 1993, the defendant was residing with his girlfriend, Desiree Brooks, in her New Haven apartment. During that same period, the victim, Brooks' six year old niece, was also residing with Brooks. During the late evening hours of March 18 or the early morning hours of March 19, 1993, while Brooks was out with friends, the defendant entered Brooks' bedroom where the victim was lying on her back in Brooks' bed. The defendant pulled down the victim's pajama pants and underwear and inserted his finger into her vagina.

The following course of events, which took place at the trial, is pertinent to the resolution of the issues in this appeal. During the state's case-in-chief, after the

jury had seen videotaped testimony of the victim, but before any other witness testified, the trial court conducted a hearing outside the presence of the jury on the defendant's motion for both an in camera review and examination of Brooks' psychiatric records. The defendant previously had subpoenaed the records from Yale Psychiatric Institute, where Brooks had been a patient for ten days in November, 1993. The trial court reviewed the records in camera and determined that there was nothing in them that was probative of Brooks' capacity to relate the truth or to observe, recollect and narrate relevant occurrences. The trial court denied the defendant's motion to examine the records.

During the defendant's case-in-chief, the defendant testified on his own behalf. The defendant held a Bible while he testified on direct examination, but defense counsel did not elicit any testimony concerning the Bible. The defendant admitted on direct examination that he previously had been convicted of a felony and had misrepresented his name to the police when he had been arrested on four separate occasions in the past.[1]

During cross-examination, the defendant admitted that he had committed four larcenies. The state's attorney then questioned the defendant about the Bible that he had held during direct examination. During cross-examination, the following exchange occurred:

"[State's Attorney]: And I noticed, by the way, when you first walked up to the witness box to begin your questioning by [defense counsel] you were carrying a book with you, weren't you?

"[The Defendant]: Yes.

"Q. And what book was that? Oh, it's over there.

---

[1] The defendant had previously told the police that his name was Gregory Ogman. Gregory Ogman is a friend of the defendant who was present in Brooks' apartment at the time the sexual assault took place.

"A. Yes, it's the Bible.

"Q. The Bible. Did you need the Bible up there with you to remind you to tell the truth, sir?

"A. No.

"Q. Did you have the Bible with you when you were living with [Brooks] in March of 1993, sir?

"A. No, sir.

"Q. Did you have the Bible with you in any of those cases when you went into those stores and stole that stuff?

"A. No, sir.

"Q. Or when you lied to the police about your name?

"A. No, sir.

"Q. You got the Bible with you now, Mr. Rogers?

"A. Yeah, I got it with me right now. I'm not lying, though, I can take a lie detector."

Defense counsel did not object to these questions and the state's attorney did not mention the Bible again during the trial. At the end of cross-examination, the state's attorney asked the defendant: "If you had touched the child, if you had stuck your finger in [the victim's] vagina, Mr. Rogers, would you come into the courtroom here and tell us you did?" The defendant objected to the line of questioning, and the trial court overruled the defendant's objection.

I

The defendant first claims that he was denied a fair trial because the trial court permitted the state's attorney to question him on cross-examination regarding the fact that he had carried a Bible to the witness stand. The defendant seeks review of this unpreserved claim

under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[2] This court has previously recognized that "[t]he first two conditions of *Golding* are determinations of whether a defendant's claim will be reviewed, and the third condition involves a review of the claim itself." *State* v. *Walker*, 33 Conn. App. 763, 769, 638 A.2d 1084, cert. denied, 229 Conn. 913, 642 A.2d 1209 (1994). We conclude that the defendant has not raised a claim of constitutional magnitude and, therefore, we do not reach the merits of this unpreserved issue.

The fact that questioning refers to religion does not automatically implicate constitutional rights. In *State* v. *Jones*, 205 Conn. 723, 739, 535 A.2d 808 (1988), our Supreme Court noted that "[i]t is conceivable that the first amendment right of a witness not to affiliate with any religion may be implicated where his lack of such an affiliation with a church is publicly exposed by the interrogation of a public official in a situation where such a church relationship is wholly irrelevant to any proper subject of governmental inquiry." In that case, the court held that it was not improper for the trial court to allow the state to ask defense alibi witnesses on cross-examination whether they had ever reported their alibi evidence to a person in a position of authority, such as a police officer, clergyman or pastor. The court concluded that the defendant "cannot rely upon a possible violation of the constitutional rights of his defense witnesses, unless there has been some impact upon his own constitutional right fair trial." Id.

This court has recognized a general prohibition against cross-examination on one's religious beliefs. In

---

[2] A defendant may prevail on a claim of constitutional error not properly preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the claim; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed

*State* v. *Heinz*, 3 Conn. App. 80, 485 A.2d 1321 (1984), this court reviewed the trial court's exclusion of a prosecution witness' testimony concerning religious beliefs. The witness had testified on direct examination as to her opinion of whether certain conduct was obscene. On cross-examination, the defendant sought to question the witness about her moral and religious beliefs. We held that the trial court had improperly excluded this testimony because the witness' religion was relevant to her direct testimony and intertwined with the substantive issues in the case. Id., 93–96.

A review of these cases leads us to conclude that certain questions concerning religion are proper if the defendant has put his religious beliefs into issue during his direct testimony or the defendant's religious beliefs are related to the case. Absent a state constitutional provision specifically proscribing such an inquiry,[3] questions concerning religion are treated as evidentiary issues when the defendant seeks to strengthen his credibility through the use of religion. When the defendant brought the Bible to the witness stand, he was presenting himself as a religious person, thereby opening the door to cross-examination concerning how his religious beliefs were inconsistent with his prior acts. Id., 95. The propriety of cross-examination under those circumstances would be an evidentiary issue and would not rise to a claim of constitutional magnitude as required by *Golding*.[4]

---

to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. *State* v. *Golding*, supra, 213 Conn. 239–40.

[3] Arizona, for example, has a specific state constitutional provision prohibiting questioning any witness as to his religious belief for the purpose of affecting his credibility. See Ariz. Const., art. II, § 12; *State* v. *Thomas*, 130 Ariz. 432, 636 P.2d 1214 (1981).

[4] Even if this issue were of constitutional dimension, we should decline to review it. Because we reverse on another issue, and this issue is unlikely to arise in the new trial, we should heed the wise admonition to refrain from resolving constitutional claims unless necessary. "This court has a basic judicial duty to avoid deciding a constitutional issue if a nonconstitu-

## II

The defendant claims that the trial court improperly allowed the state to ask the defendant questions that required him to assume that he was guilty.[5] The state

tional ground exists that will dispose of the case." *Moore* v. *McNamara*, 201 Conn. 16, 20, 513 A.2d 660 (1986). "The best teaching of this Court's experience admonishes us not to entertain constitutional questions in advance of the strictest necessity." (Internal quotation marks omitted.) Id., 21.

[5] The following colloquy occurred on cross-examination of the defendant:

"Q. Of course, if you had stuck your finger in [the] six year old [victim] you'd come into court here and you'd tell the jury that you did that, wouldn't you, sir?

[Objection made and overruled.]

"Q. You'd come in here, wouldn't you, sir if you'd stuck your finger in [the victim] and tell the jury [and] the judge you'd done it, you'd do that, wouldn't you, sir, would you tell them that?

"A. State that again.

"Q. If you had stuck your finger in [the victim], you'd come into the courtroom here and you'd tell the jury, you'd tell the judge you did it, wouldn't you ?

"A. No, I wouldn't. I mean, I haven't touched her, so why are you making me try to look like I touched her?

"Q. I'm not asking you that, I'm asking you if you had done that you'd say you did it if you had done it, sir, you'd tell the judge that you did do it, is that your testimony?

"[Defense Counsel]: Objection.

"The Witness: I haven't touched her, so.

"The Court: Just a minute. What's your objection?

"[Defense Counsel]: It's argumentative.

"[Assistant State's Attorney]: It's the same question I've asked that he hasn't answered yet.

"The Court: Overruled.

"[Defense Counsel]: It's a hypothetical question, it's not the same as the question I asked.

"[Assistant State's Attorney]: There is no—

"[Defense Counsel]: It's not the reverse of the question I asked, it's a hypothetical question, if you did this and I say that, that's a hypothetical question.

"[Assistant State's Attorney]: [Defense counsel] asked him if he did and he said no.

"[Defense Counsel]: I asked the fact, not if he didn't.

"The Court: Overruled.

"[Assistant State's Attorney]: Do you understand my question, Mr. Rogers?

"A. Yes, I do. I haven't touched the child.

argues that these questions were merely hypothetical and that it was within the discretion of the trial court to allow them. The state further argues that the trial court did not abuse its discretion, as the questions were targeted to the defendant's credibility. Finally, the state contends that even if the questions were improper, the error was harmless in light of the strong evidence of the defendant's guilt. We conclude that the trial court abused its discretion by allowing this highly prejudicial line of questioning.

"Our standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did. . . . *State* v. *Leonard*, 31 Conn. App. 178, 190, 623 A.2d 1052, cert. granted, 226 Conn. 912, 628 A.2d 985 (1993), appeal withdrawn on January 7, 1994." (Internal quotation marks omitted.) *State* v. *Rogers*, 38 Conn. App. 777, 796, 664 A.2d 291 (1995).

It is well settled that on cross-examination, the examiner may not couch the question so that it assumes as true matters to which the witness has not testified and that are in dispute between the parties. 1 C. McCormick, Evidence (4th Ed. 1992) § 7. Such a statement is improper "because it may by implication put into the mouth of an unwilling witness, a statement which he never intended to make, and thus incorrectly attribute

---

"Q. If you had touched the child, if you had stuck your finger in [the victim's] vagina, Mr. Rogers, would you come into the courtroom here and tell us you did?

"A. No."

to him testimony which is not his." 3 J. Wigmore, Evidence (Chadbourn Rev. 1970) § 780; see also *United States* v. *DeFillipo*, 590 F.2d 1228, 1240 (2d Cir. 1979). "Questions that mislead a witness are objectionable, such as those that assume facts in dispute or not in evidence. *State* v. *Isaacson*, 114 Conn. 567, 574, 159 A. 483 (1932); *State* v. *Duffy* 57 Conn. 525, 526–27, 18 A. 791 (1889). Questions that argue with a witness are also improper, *Frenchette* v. *New Haven*, 104 Conn. 83, 96, 132 A. 467 (1926), such as those that ask him to agree with the examiner's facts or interpretations or that ask if he heard or agreed with contrary testimony of another witness . . . ." C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 7.12.3.

The state directs this court to *State* v. *Gaffney*, 209 Conn. 416, 551 A.2d 414 (1988), in which our Supreme Court addressed a defendant's claim that the trial court had improperly allowed the state to cross-examine the defendant with a hypothetical question. In *Gaffney*, the defendant pleaded guilty to all of the elements of the offenses with which he was charged, but a trial was conducted on the defendant's insanity defense. The defendant essentially admitted that he had entered the victim's residence and tied her to her bed. During cross-examination, the state asked the defendant: " 'If there were six police officers sitting at the kitchen table playing poker, you think you would have gone into that bedroom and tied [the victim] to the bed?' " Id., 419–20. Our Supreme Court found the question relevant and held that "[i]n allowing the hypothetical question complained of, the trial court, in keeping with that line of questioning, was obviously permitting the state to *plumb the depths of the defendant's capacity to restrain himself under various circumstances. Such an inquiry was at least of some relevance to the defendant's ability to control his conduct within the requirements of the law, which is an integral facet of the statutory defense*

of insanity and was the central issue in the case." Id., 421. The court concluded that even though the state's question hypothesized an extreme situation, "the allowance of the hypothetical question posed by the state lay within the broad discretion afforded the trial court to determine the permissible scope of cross-examination." Id.

The state's questions in this case are distinguishable from those in *Gaffney*. In *Gaffney*, the court found that the question was relevant and probative as to the central issue of insanity. The issue in that case was whether the defendant would have committed the crime if the circumstances were different. The question was probative as to that ultimate jury issue. In this case, the prosecution asked the defendant to assume that he was guilty for the purpose of testing the defendant's veracity. The questions required the defendant to assume facts in dispute and to concede the ultimate jury issue. In *Gaffney*, the defendant was not asked to make any such assumption or concession.

We conclude that the trial court abused its discretion by allowing the state's attorney to ask the defendant questions that required him to assume that he was guilty. The argumentative line of questioning by the state's attorney was so prejudicial to the defendant that a substantial injustice will result if the defendant is not afforded a new trial. See *State* v. *Payne*, 219 Conn. 93, 114, 591 A.2d 1246 (1991). A review of the record in this case persuades us that the defendant's credibility was crucial to his case, and placing the defendant in a position in which he was forced to testify as if he had committed the crime severely undermined his defense. By allowing the state to end its cross-examination with this highly improper line of questioning, the trial court allowed the state's attorney to leave the defendant's assumption of guilt in the jurors' minds. We find that the improper questions asking the defendant to assume

that he was guilty had the tendency to influence the judgment of the jury such that it cannot be considered harmless error. See id., 106; *State* v. *Onofrio*, 179 Conn. 23, 32, 425 A.2d 560 (1979). We conclude that the trial court abused its discretion by allowing the improper questions and the defendant must be afforded a new trial.

### III

We also address the defendant's final claim because it is likely to arise again in the defendant's new trial. The defendant claims that the trial court violated his constitutional right of confrontation by failing to ask a witness if she would allow her psychiatric records to be examined by the defendant's attorney. We disagree.

Our courts have recognized the conflict between a defendant's right to confrontation and cross-examination and the public policy interest of preserving the confidentiality of certain records. *State* v. *Pratt*, 235 Conn. 595, 607–608, 669 A.2d 562 (1995); *State* v. *D'Ambrosio*, 212 Conn. 50, 57, 561 A.2d 422 (1989), cert. denied, 493 U.S. 1063, 110 S. Ct. 880, 107 L. Ed. 2d 963 (1990). In *D'Ambrosio*, the Supreme Court directed trial courts to engage in a special procedure designed to accommodate this inherent tension. First, the defendant must show that there is a reasonable ground to believe that the failure to produce the records would likely impair the defendant's right to impeach the witness; second, if successful, the state must then obtain permission from the witness for the court to inspect the records in camera; third, the court must determine whether the records are especially probative of the witness' capacity to relate the truth or to observe, recollect and narrate relevant occurrences. Id., 58. If the court determines that the records are probative, then the state must obtain the witness' further waiver of his or her privilege concerning the relevant portions of the

record for release to the defendant. Id. If the court finds no probative and impeaching material, the entire record of the proceeding must be sealed and preserved for possible appellate review. Id. This procedure preserves the right of confrontation in a manner that allows the court, as a legally trained objective reviewer, to decide whether the record contains information relevant and material to the defendant's cross-examination of that witness. The procedure simultaneously preserves the confidentiality of the witness' psychiatric records.

The defendant claims that the witness was willing to waive her privilege and, therefore, there was no reason for the court to insert itself between the witness' records and the defendant's review and use of them. A review of the court transcript shows that the court questioned the witness as part of the application of the procedure set forth in *D'Ambrosio,* and the witness gave the court permission to review her psychiatric records in camera if the court felt that it was appropriate to do so pursuant to the procedure. The witness also gave the court permission to show the state's attorney and defense counsel those portions of the records that the court felt were appropriate to show to them. The court, after argument by both parties, determined that the defendant had made a preliminary showing that the failure to produce the records would likely impair his right to impeach the witness. The court relied on the fact that the witness was in treatment, in part, because of the guilt she felt about leaving the victim with the defendant on the night the sexual assault took place. After reviewing the records in camera, the court concluded that there was nothing in the records that was especially probative of the witness' capacity to relate the truth or to observe, recollect and narrate relevant occurrences. The court then denied the defendant's request that the court ask the witness to allow the defendant to inspect her psychiatric records. The court

made the defendant aware that although the request to inspect the records was denied, the defendant could cross-examine the witness as to whether her guilty feelings affected the reliability of her testimony. The defendant chose not to do so.

We conclude, in light of the trial court's findings after the in camera inspection, that the records did not contain probative information and the trial court did not abuse its discretion in denying the defendant access to the records. Furthermore, the trial court did not improperly refuse to ask the witness to allow the defendant access to her psychiatric records. The court adequately protected the defendant's right to confrontation by performing the in camera review and allowing cross-examination on the issue of the witness' reliability with respect to her guilt feelings.

The judgment is reversed and the case is remanded for a new trial.

In this opinion SPEAR, J., concurred.

HENNESSY, J., concurring. While I do not disagree with the majority on parts II and III of its decision, I write separately to state that I would reverse the judgment of the trial court on the ground that the state unconstitutionally injected the issue of the defendant's religious beliefs into the case during cross-examination. The majority has sufficiently set forth the pertinent facts.

The defendant seeks review of this unpreserved claim under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[1] The state contends pursuant to the first prong

---

[1] A defendant may prevail on a claim of constitutional error not properly preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the claim; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of

of *Golding*, that the defendant did not establish an adequate record for review. In support of their contention, the state claims that because the record reflects neither the size of the Bible nor the manner in which the defendant displayed the Bible before the jury, if at all, it is impossible to determine whether his carrying a Bible to the witness stand was motivated by sincere religious sentiment or was intended to have the jury view the defendant favorably as a religious person unlikely to have committed the act with which he was charged. The state argues, therefore, that it is impossible to characterize the state's questions as either clearly evidentiary or arguably constitutional. The defendant claims that the transcript of the questions asked and the responses given presents an adequate record to determine whether this claim is of constitutional or evidentiary nature. I conclude that the record is adequate to make this determination, and, therefore, conclude that the first prong of *Golding* is satisfied.

The second prong of *Golding* is also satisfied. A defendant's religious beliefs are generally not a proper subject of cross-examination for the purpose of impeaching credibility. Such an inquiry is ordinarily irrelevant to the issues at hand, inflammatory and unduly prejudicial. *State* v. *Heinz*, 3 Conn. App. 80, 94, 485 A.2d 1321 (1984). Our Supreme Court has warned the state "that it must exercise caution when exploring lines of questioning that implicate religious belief. The state should avoid any inquiry into or reference to religious belief or practices unless the nature of the case makes religious belief an unavoidable issue." *State* v. *Jones*, 205 Conn. 723, 740, 535 A.2d 808 (1988). "This general prohibition against cross-examination on one's

a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

religious beliefs is not absolute, however. Such cross-examination is permissible, in the court's discretion, if it is relevant to the substantive issues of the case and if its relevance outweighs any prejudicial effect and the privacy interest of the witness. . . . Furthermore, cross-examination about religious beliefs is proper if the topic was raised on direct examination, even if it would otherwise be inadmissible." (Citations omitted.) *State* v. *Heinz*, supra, 94–95.

The record reveals that the state intended to attack the defendant's credibility through the use of religion. It is evident from the record that the questioning was neither relevant to an issue in the case nor relevant to the direct examination of the defendant. Therefore, the possibility that these questions, pertaining to the defendant's religious beliefs, deprived the defendant of a fair trial is of a constitutional magnitude. *State* v. *Jones*, supra, 205 Conn. 738–39.

Next, I address the third prong of *Golding*. Our case law allows certain questions related to religion if the defendant has put them into issue during his direct testimony or they are related to the case. In this case, the state failed to establish that its questions related to the defendant's direct testimony or were part of the case. The assistant state's attorney should have clarified the record by objecting to any claimed improper use of the Bible or by requesting that the record reflect the manner of any alleged display of the Bible by the defendant during direct examination. Furthermore, the state had the opportunity to question the defendant during cross-examination about the size and display, if any, of the Bible but chose not to do so. Nothing in the record indicates that the Bible was visible to the jury during direct examination. By failing to establish that the defendant had put the Bible at issue during his direct testimony, the state cannot escape the conclusion

that it was using the fact that the defendant carried a Bible for the sole purpose of attacking his credibility.

In *State* v. *Jones,* supra, 205 Conn. 739, our Supreme Court held that it was not improper for the trial court to allow the state to ask defense alibi witnesses on cross-examination whether they had ever reported their alibi evidence to a person in a position of authority, such as a police officer, clergyman or pastor. The court held that while this type of questioning referring to church officials implicated constitutional rights, it was not improper because "the state's questions may reasonably be construed as designed to elicit whether these witnesses had reported their alibi evidence to a person in a position of authority before the trial rather than to discredit these witnesses by calling attention to their religious affiliations or lack thereof." Id., 736–37.

This court has also recognized a general prohibition against cross-examination on one's religious beliefs. *State* v. *Heinz,* supra, 3 Conn. App. 94. In *Heinz,* this court reviewed the exclusion of prosecution witness' testimony concerning religious beliefs. Id., 93. The witness had testified on direct examination as to her opinion of whether certain conduct was obscene. Id., 94. We held that the trial court had improperly excluded this testimony because the witness' religion was relevant to her direct testimony and intertwined with the substantive issues in the case. Id., 95–96.

In this case, the questions standing alone clearly establish that the state used the Bible to attack the defendant's credibility—a practice condemned by this court and our Supreme Court. *State* v. *Jones,* supra, 205 Conn. 740; *State* v. *Heinz,* supra, 3 Conn. App. 94–95. I agree with the state that if the defendant had carried the Bible to the stand in an obvious manner and displayed it in a way designed to influence the jury and strengthen his credibility, the state could cross-

examine the defendant about his religious practice of carrying a Bible. There, the topic would have been raised on direct examination. *State* v. *Heinz*, supra, 95. Cross-examination under those circumstances would be evidentiary and would not rise to the constitutional level required by the second prong of *Golding*.

The record, however, is clear that the state's questions centered on the issue of religion and the defendant's religious beliefs for the sole purpose of attacking the defendant's credibility. The questions were improper, and under the circumstances of this case, deprived the defendant of a fair trial. See *People* v. *Hall*, 391 Mich. 175, 215 N.W.2d 166 (1974); *State* v. *Kimbrell*, 320 N.C. 762, 360 S.E.2d 691 (1987). I would conclude that a constitutional violation clearly exists, and that the violation clearly deprived the defendant of a fair trial.

Having determined that the first three prongs are satisfied, I address the fourth prong of *Golding*, whether "if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding*, supra, 213 Conn. 240. The state's questions relating to the Bible attacked the defendant's credibility on the basis of his religious beliefs. Because the defendant's credibility was a central issue in this case, the state's improper questions necessarily affected the defendant's opportunity for a fair trial. In light of the inflammatory and prejudicial nature of these questions and the state's failure to establish that they were unavoidable, I would conclude that the state's questions regarding the Bible were not harmless and the defendant was deprived of a fair trial. See *People* v. *Hall*, supra, 391 Mich. 175; *State* v. *Kimbrell*, supra, 320 N.C. 762.

Accordingly, I would reverse the judgment of the trial court and remand the case for a new trial on the ground

that the state improperly injected the defendant's religious beliefs into the case in its cross-examination of the defendant.