# HEATHER MEDES ET AL. *v.* GEICO CORPORATION
## (AC 26504)

DiPentima, Rogers and Lavine, Js.

Argued April 25—officially released September 26, 2006

*Joseph M. Merly*, with whom, on the brief, was *John R. Williams*, for the appellants (plaintiffs).

*Kieran S. Cassidy*, for the appellee (defendant).

*Opinion*

LAVINE, J. Although the jury returned a verdict in their favor, the plaintiffs, Heather Medes and Dara Medes, appeal from the judgment of the trial court rendered in favor of the defendant, Geico Corporation, in this underinsured motorist action. The plaintiffs claim that the court improperly (1) admitted evidence about their religion and related activities, (2) allowed impermissible arguments in summation to the jury, (3) pressured the jury by setting an implicit time limit on deliberations and (4) denied their motions to set aside the verdict. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the resolution of the plaintiffs' appeal. The defendant had issued the plaintiffs' father a motor vehicle insurance policy that provided underinsured motorist coverage. On April 22, 1994, the plaintiffs were injured while passengers in a motor vehicle that was covered by the policy. The tortfeasor paid each of the plaintiffs $100,000 as compensation for the injuries they sustained when the motor vehicle was struck from

behind. The plaintiffs then commenced this action against the defendant seeking underinsured motorist benefits.

The plaintiffs alleged that, as a result of the accident, they sustained permanent injuries that rendered them unable to function as they had prior to the accident and diminished their quality of life. During the trial, the defendant's counsel questioned the plaintiffs extensively about the effect their injuries had on their daily lives, including their religious activities as Jehovah's Witnesses. The jury returned a verdict in the amount of $50,000 for Dara Medes and $75,000 for Heather Medes. The plaintiffs each filed motions to set aside the verdict or, in the alternative, for additur. The defendant filed a motion for judgment in its favor on the ground that the plaintiffs had been fully compensated by the tortfeasor. The court denied the plaintiffs' motions to set aside the verdict and for additur and granted the defendant's motion for judgment in a memorandum of decision filed April 13, 2005. This appeal followed. Additional facts and procedural history will be provided as necessary.

I

The plaintiffs' first claim is that the court denied them their right to a fair trial when it allowed the jury to consider evidence about their religion and related activities. More specifically, the plaintiffs assert that the court permitted the defendant's counsel to "repeatedly . . . inject religious prejudice into this case" by allowing him to question the plaintiffs about their ability to participate in various religious activities, including attending church meetings and sharing their faith with others by distributing literature door to door. We disagree.

The following facts are relevant to the plaintiffs' claim. The defendant's counsel asked the plaintiffs'

father about his family's practices as Jehovah's Witnesses and if he was familiar with the doctrine of theocratic warfare.[1] The plaintiffs' counsel objected to this line of questioning. The court promptly excused the jury and instructed counsel not to pursue this area of inquiry, stating that it was not appropriate. The court then instructed the jury to "disregard any questions that were asked of this witness . . . concerning his religion or religious beliefs or practices."

We begin by setting forth the applicable standard of review. "It is well settled that the trial court's evidentiary rulings are entitled to great deference. . . . The trial court is given broad latitude in ruling on the admissibility of evidence, and we will not disturb such a ruling unless it is shown that the ruling amounted to an abuse of discretion." (Citation omitted.) *Pestey* v. *Cushman*, 259 Conn. 345, 368–69, 788 A.2d 496 (2002).

We have recognized that "[i]t would be a rare trial, indeed, if counsel for one side or the other did not pose an objectionable question, whether by design or inadvertence, the motive for which we have no way of determining. Our rules of practice provide a means to prevent improper questions from being answered." *State* v. *Camacho*, 92 Conn. App. 271, 297, 884 A.2d 1038 (2005), cert. denied, 276 Conn. 935, 891 A.2d 1 (2006). In this instance, the plaintiffs' counsel objected to the questioning about "theocratic warfare." The court sustained the objection and took curative measures to remove any taint the objectionable questions may have caused. We presume that the jury followed the court's curative instruction, absent evidence to the contrary. See *Hayes* v. *Caspers, Ltd.*, 90 Conn. App. 781, 800, 881 A.2d 428, cert. denied, 276 Conn. 915, 888 A.2d 84 (2005). Given that the court sustained the objection, prohibited

---

[1] We note that the record does not disclose what is meant by the term "theocratic warfare."

further questioning in this area, and gave a curative instruction directing the jury to disregard any questions concerning the witness' religion, religious beliefs and practices, we conclude that the court did not abuse its discretion.[2]

The plaintiffs also claim that the court improperly permitted the defendant's counsel repeatedly to ask questions regarding their religious activities in violation of their first amendment rights. The plaintiffs' counsel did not object to this questioning and did not include it as a basis to grant the motions to set aside the verdict. On appeal, the plaintiffs ask us to analyze the claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A2d 823 (1989).[3]

The fact that the defendant's counsel asked questions related to the plaintiffs' participation in religious activities does not in and of itself implicate constitutional rights. See *State* v. *Rogers*, 41 Conn. App. 204, 208, 674 A.2d 1364, cert. denied, 237 Conn. 926, 677 A.2d 949, 950 (1996). We decline to review the claim because the plaintiffs have put a constitutional tag on an evidentiary issue. "[E]videntiary issues are not ordinarily of a constitutional magnitude." *Wakefield* v. *Commissioner of*

---

[2] We stress that courts have a heightened duty to scrutinize questions that relate to a person's religious practices or beliefs because of the potential for abuse or prejudice to parties or witnesses. Gratuitous, irrelevant questioning about religious beliefs and practices should not be permitted. Cf. *State* v. *Jones*, 205 Conn. 723, 738–40, 535 A.2d 808 (1988) (discussing impermissible questions implicating religious beliefs in a criminal trial); *State* v. *Rogers*, 41 Conn. App. 204, 217–18, 674 A.2d 1364 (same) (*Hennessy, J.*, concurring), cert. denied, 237 Conn. 926, 677 A.2d 949, 950 (1996).

[3] We note that the plaintiffs could prevail on a claim of constitutional error not preserved at trial "only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the [plaintiffs] of a fair trial; and (4) if subject to harmless error analysis, the [defendant] has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

*Motor Vehicles*, 90 Conn. App. 441, 444 n.4, 877 A.2d 1, cert. denied, 275 Conn. 931, 883 A.2d 1253 (2005). In seeking significant damages for a diminished capacity to carry on and enjoy life's activities, the plaintiffs directly put at issue the extent to which their injuries affected their ability to participate in certain activities related to their religious practices. We accordingly decline to analyze the claim under *Golding*, as it is not of constitutional magnitude.

## II

The plaintiffs next claim that the court abused its discretion by permitting the defendant's counsel to make improper remarks in summation to the jury. More specifically, the plaintiffs argue that the court allowed counsel to interject several impermissible statements of personal opinion as to the credibility of the plaintiffs' testimony.

The following facts are relevant to our analysis of the plaintiffs' claim. During his summation, the defendant's counsel first stated that "[i]n my eighteen years of doing this, I've never seen a case full of so many misrepresentations, so many untruths, so many exaggerations." Second, the defendant's counsel stated that an expert witness the plaintiffs had called, David Astrachan, a physician, "had a beef with insurance companies." The plaintiffs' counsel objected to the second statement but not to the first statement. We decline to consider the plaintiffs' argument with regard to the first statement because it was not properly preserved for appellate review.[4] See *Trumpold* v. *Besch*, 19 Conn. App. 22, 30, 561 A.2d 438 ("absence of any objection or exception to improper argument, which we may infer from the

[4] For the same reasons, we decline to review the plaintiffs' claim that the court improperly permitted the defendant's counsel to state that Robert A. Novelly, a physician, the plaintiffs' main witness, "had a problem with malpractice."

absence of any such indication in the transcript, has
. . . been regarded as a waiver of the right to press
such a claim of error" [internal quotation marks omit-
ted]), cert. denied, 212 Conn. 812, 565 A.2d 538 (1989),
cert. denied, 494 U.S. 1029, 110 S. Ct. 1476, 108 L. Ed.
2d 613 (1990).[5]

We turn to the comment regarding Astrachan. The
court overruled the plaintiffs' objection because the
statement that he "had a beef with insurance compa-
nies" was made during the course of argument to the
jury. "A trial court is invested with a large discretion
with regard to arguments of counsel, and appellate
courts should only interfere with a jury verdict if the
discretion has been abused to the manifest injury of a
party." *Palkimas* v. *Lavine*, 71 Conn. App. 537, 548, 803
A.2d 329, cert. denied, 262 Conn. 919, 812 A.2d 863
(2002). Moreover, we note that "[i]n addressing the jury,
[c]ounsel must be allowed a generous latitude in argu-
ment, as the limits of legitimate argument and fair com-
ment cannot be determined precisely by rule and line,
and something must be allowed for the zeal of counsel
in the heat of argument." (Internal quotation marks
omitted.) *Durso* v. *Aquilino*, 64 Conn. App. 469, 476,
780 A.2d 937 (2001). In reviewing whether the court
abused its discretion in allowing the argument, our task
is twofold. First, we must determine whether the
remarks were improper. *Palkimas* v. *Lavine*, supra,
546. If we determine that the remarks were improper,
we must then determine whether a new trial is neces-
sary. Id. In the present case, the court overruled the

---

[5] In their motions to set aside the verdict, the plaintiffs claimed, as a
reason to set aside the verdict, the alleged misconduct of the defendant's
counsel. No memoranda of law accompanied the motions. If the court heard
oral arguments on the motions from counsel, there is no transcript of the
arguments for us to review. In its memorandum of decision, the court
addressed the reference of the defendant's counsel to the plaintiffs' religious
beliefs during cross-examination. The court did not address counsel's con-
duct during final argument, and the plaintiffs failed to file a motion for
articulation to perfect the record. See Practice Book § 66-5.

plaintiffs' objection because it determined that the remarks regarding Astrachan were within the realm of permissible argument. On the basis of our review of the transcript, we agree and conclude that the court did not abuse its discretion in allowing counsel latitude in argument and overruling the objection.

III

The plaintiffs' third claim is that the court denied them their right to a fair trial by repeatedly pressuring the jury to confine its deliberations to a single day and that this constitutes reversible error. Having reviewed the record, we conclude that the claim was not properly preserved at trial.

A review of the trial transcript reveals that near the end of the evidence and just prior to being excused for a long weekend, several jurors raised questions concerning previously scheduled engagements and asked the court whether they should change their plans. In response to one juror's question regarding whether he should alter flight arrangements scheduled for the end of the following week, the court replied: "I can't really answer that question, because it depends upon how long—there is no time limit, as to your deliberation, and if you were to go one or two or three days on deliberations, then it would be a problem." Then, the court indicated that "hopefully, hopefully, if you have a full day to deliberate, that should be sufficient." The court then advised the jury that it would have as much time as it needed for deliberations. Review of the transcript further reveals that the plaintiffs' counsel participated in discussions concerning the scheduling of the final stages of the trial, had a full opportunity to object to the court's comments and failed to do so. See *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 90 n.9, 881 A.2d 139 (2005) (discussing action that induces claimed error); *State* v. *Felder*, 95 Conn. App. 248, 255–56, 897

A.2d 614 (same), cert. denied, 279 Conn. 905, 901 A.2d 1226 (2006). We therefore decline to reach the merits of the plaintiffs' claim because we conclude from a review of the record that the issue is not reviewable.[6]

IV

The plaintiffs' final claim is that the court improperly denied their motions to set aside the verdict because the verdict was contrary to the evidence. We disagree.

"The standard of review governing our review of a trial court's denial of a motion to set aside the verdict is well settled. The trial court possesses inherent power to set aside a jury verdict which, in the court's opinion, is against the law or the evidence. . . . [The trial court] should not set aside a verdict where it is apparent that there was some evidence upon which the jury might reasonably reach [its] conclusion, and should not refuse to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles . . . . Ultimately, [t]he decision to set aside a verdict entails the exercise of a broad legal discretion . . . that, in the absence of clear abuse, we shall not disturb." (Internal quotation marks omitted.) *Edmands* v. *CUNO, Inc.*, 277 Conn. 425, 452–53, 892 A.2d 938 (2006).

In a detailed memorandum of decision, the court explained the reasons why it denied the plaintiffs' motions to set aside the verdict. Heather Medes was a front seat passenger, and Dara Medes was a rear seat passenger. The plaintiffs claimed almost identical injuries to identical parts of their bodies. They both claimed a loss of cognitive ability and visual impairment. As a

---

[6] We note, however, that it is proper for the court to inform the jurors of their duties and responsibilities. See *State* v. *Delgado*, 8 Conn. App. 273, 278 n.3, 513 A.2d 701 (1986).

result of these injuries, they asserted that their educational pursuits were adversely affected. In the court's opinion, the similarity of the plaintiffs' claims had an adverse effect on their case. The plaintiffs' and the defendant's experts offered contradictory evidence as to the nature and extent of the plaintiffs' injuries. The court concluded that "the plaintiffs' expert witnesses and the evidence in the case presented the jury with multiple issues of credibility on which it based its verdict." The court noted that it is the jury's role to make credibility determinations.

On the basis of our review of the record, we conclude that there was substantial contradictory evidence presented at trial as to the extent of the plaintiffs' injuries and the effect they had on the plaintiffs' daily lives. "The existence of conflicting evidence . . . curtails the authority of the court to overturn the verdict because the jury is entrusted with deciding which evidence is more credible and what effect it is to be given." (Internal quotation marks omitted.) *Hughes* v. *Lamay*, 89 Conn. App. 378, 384, 873 A.2d 1055, cert. denied, 275 Conn. 922, 883 A.2d 1244 (2005). Given that the nature and extent of the plaintiffs' injuries were highly disputed, it was the jury's task to determine the credibility of the witnesses, including experts, and to weigh the evidence. See *Childs* v. *Bainer*, 235 Conn. 107, 119–20, 663 A.2d 398 (1995). The jury's verdict fell somewhere within the necessarily uncertain limits of fair and reasonable compensation. See id. Accordingly, we conclude that the court did not abuse its discretion in denying the plaintiffs' motions to set aside the verdict.

The judgment is affirmed.

In this opinion the other judges concurred.