## CHESTER OLKOWSKI ET AL. *v.* JUSTIN DEW ET AL.
### (AC 16945)

Landau, Hennessy and Dupont, Js.

Argued February 18—officially released June 2, 1998

*Campbell D. Barrett,* with whom, on the brief, was *C. Michael Budlong,* for the appellants (named plaintiff et al.).

*William J. Melley III,* for the appellees (defendants).

*Opinion*

DUPONT, J. The plaintiffs appeal from the judgment of the trial court, rendered in favor of the defendants after a jury trial, in this negligence action brought by the plaintiffs for injuries suffered when the car in which they were riding was struck by a car driven by the named defendant, Justin Dew. On appeal, the plaintiffs claim that the trial court improperly (1) failed to charge the jury that the defendants "take the plaintiffs as they find them," and (2) admitted evidence that the named plaintiff physically abused the plaintiff Raymond Olkowski. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On June 20, 1992, at approximately 5:55 p.m., the plaintiffs Chester Olkowski and his son Raymond Olkowski[1] were traveling east in a van on Thompsonville Road in Suffield. At the same time the defendant Justin Dew was also traveling east on that road in a pickup truck, registered and maintained in the names of his parents, the defendants John Dew and Beatrice Dew. As the plaintiffs' vehicle stopped for a red light at the intersection of Thompsonville Road and Route 159, the defendants' vehicle collided with the rear of the plaintiffs' vehicle.

The plaintiffs alleged that as a result of the collision, they suffered mental and physical injuries, and that the collision was a result of Justin Dew's negligence. Particularly, the plaintiff Chester Olkowski alleged

---

[1] The matter was withdrawn before trial as to a third occupant, the plaintiff Debra Bolduc. We refer in this opinion to Chester Olkowski and Raymond Olkowski as the plaintiffs.

extensive injuries to his neck and back, and the plaintiff Raymond Olkowski alleged, among other things, headaches, mental distress, anxiety, shock and nervousness. The defendants denied that any negligence on their part was the proximate cause of the plaintiffs' injuries. A trial was held in this matter on various dates between January 2 and January 8, 1997. No interrogatories were submitted to the jury. After hearing the evidence, the jury returned general verdicts in favor of the defendants against both plaintiffs.[2] On January 21, 1997, the plaintiffs filed a motion to set aside the verdict and for a new trial based on the same claims that are raised in this appeal. The trial court heard oral argument by the parties on February 10, 1997, and denied the plaintiffs' motions.

I

The plaintiffs first claim that the trial court improperly failed to charge the jury that the defendants "took the plaintiffs as they found them." At trial, both parties offered evidence that the plaintiff Chester Olkowski had suffered various injuries to his neck and back both prior to and soon after the accident.[3]

[2] A review of the plaintiffs' claims is not precluded by the general verdict rule. *Blancato* v. *Randino*, 33 Conn. App. 44, 46–47, 632 A.2d 1144, cert. denied, 228 Conn. 916, 636 A.2d 846 (1993).

[3] The defendants elicited a variety of evidence through both cross-examination of Chester Olkowski and direct examination of Joseph Schlaffer, a chiropractor who treated Chester Olkowski, that Chester Olkowski had received medical treatment for injuries to his neck and back that occurred prior to the automobile accident. Specifically, the defendants produced evidence that Chester Olkowski was injured lifting a snowmobile sometime in the late 1970s, moving a refrigerator in 1980 or 1981, in an accident at work where a file cabinet fell on him in 1989 and moving tables for a Christmas party at work in 1990. The defendants also elicited evidence that Chester Olkowski was treated for an injury to his neck in an accident involving a horse soon after the automobile accident.

In addition, the plaintiffs introduced into evidence a letter dated April 19, 1994, from John Raycroft, one of Chester Olkowski's physicians, stating that 5 percent of Chester Olkowski's 15 percent permanent partial disability to his neck was a result of preexisting cervical spondylosis.

In light of the evidence relating to Chester Olkowski's prior neck and back injuries, the plaintiffs requested that the trial court charge the jury that the defendants must "take their victims as they find them" and that the defendants are responsible for all the injuries proximately caused by their negligence, even if the plaintiffs had preexisting conditions that would cause them to be more severely injured by the defendants' conduct.[4] The trial court refused to provide the jury with the requested charge reasoning that "the eggshell plaintiff instruction was not given because there was no allegation that the plaintiffs had any sort of preexisting injury . . . ." Instead, the court delivered to the jury an extensive charge regarding causation in negligence actions, and directed the jury that the defendants are responsible for all of the damages occasioned by their negligence, even those that were not reasonably anticipated.[5]

The trial court has wide discretion in charging a jury. "It is not error for a trial court to charge the jury in

On direct examination, Chester Olkowski acknowledged that he did not disclose his prior treatment for his neck and back conditions during discovery.

[4] The plaintiffs provided the court with the following request to charge: "The plaintiffs are entitled to recover full and complete compensation for all of their injuries and damages, and the effects caused by or proximately resulting from the defendants' negligence. The defendants take plaintiffs, Chester A. Olkowski and Raymond Olkowski, as they find them. The defendants are chargeable with all of the results of the injuries proximately caused by their negligence, and the defendants cannot now excuse these results by saying that the plaintiffs had preexisting conditions, which would make them suffer more and longer or cause them to be more severely injured, than they would otherwise have been. . . . The defendants must take the victims as they find them. . . ."

[5] The court's charge to the jury regarding causation stated in part: "It is elementary that in a negligence case such as this one, the causal relation between the defendant's alleged wrongful conduct and the plaintiffs' injuries must be established in order for the plaintiffs to recover damages. . . . [I]f you find that the accident was a substantial factor in bringing about the injuries to the plaintiffs, then you will find that the accident was a proximate cause of those injuries. . . . The plaintiffs are entitled to recover for all damages proximately caused by the defendants' wrongful acts, whether

language other than that submitted by the parties. . . .
A charge must be read as a whole; the test is not whether
it is exhaustive, letter perfect or technically accurate
. . . but whether the charge as a whole fairly presented
the case so that no injustice was done." (Citations omitted; internal quotation marks omitted.) *Rogers* v. *Delfino*, 13 Conn. App. 725, 728, 539 A.2d 156 (1988); see
*Kelley* v. *Bonney*, 221 Conn. 549, 584, 606 A.2d 693
(1992).

"Claims of error addressed to the [jury] charge are
tested by the pleadings and by the evidence . . . ."
*Tierney* v. *American Urban Corp.*, 170 Conn. 243, 250,
365 A.2d 1153 (1976). "The court has a duty to submit
to the jury no issue upon which the evidence would not
reasonably support a finding. . . . The court should,
however, submit to the jury all issues as outlined by
the pleadings and as reasonably supported by the evidence." (Citations omitted; internal quotation marks
omitted.) *Goodmaster* v. *Houser*, 225 Conn. 637, 648,
625 A.2d 1366 (1993).

In this case, the plaintiffs concede that the aggravation of a preexisting injury was not a theory of the
amended complaint, but rely on the case of *Bruneau*
v. *Quick*, 187 Conn. 617, 633, 447 A.2d 742 (1982), in
support of the position that they were entitled to the
preexisting injury charge despite the fact that the aggravation of a preexisting injury was not a theory of the
case. In *Bruneau*, the defendant claimed that the trial
court improperly provided the jury with a preexisting
injury or "take the plaintiff as you find him" charge
because the aggravation of a preexisting injury was
not a theory of the plaintiff's case and there had been
" 'absolutely no testimony which suggested that this
condition . . . had been aggravated.'. . ." Id. In *Bruneau*, the trial court determined and our Supreme Court

or not the results were reasonably to be anticipated from such wrongful
acts. . . ."

affirmed that there was, in fact, evidence from which the jury reasonably " 'could find or infer that the effect on this particular [p]laintiff of some of the claimed injuries may be different in degree because she had a [preexisting] condition than if she didn't.' " Id., 634.

In the present case, on the other hand, the trial court properly determined, and the plaintiffs in fact concede, that there was absolutely no evidence presented that Chester Olkowski's preexisting back and neck injuries were aggravated or that they had any effect on the claimed injuries from the accident. The plaintiffs offer no support for the claim that the introduction of evidence regarding the existence of prior injuries, without evidence regarding the effect on or connection to the claimed injuries, warrants a preexisting injury charge. See *Rubano* v. *Koenen,* 152 Conn. 134, 136, 204 A.2d 407 (1964) (preexisting injury charge appropriate where claim of aggravation of preexisting injury not raised by plaintiff, but trial court heard expert testimony that plaintiff had sustained back injury in accident "with probable aggravation of a preexisting disc pathology at the lumbosacral level"); *Parker* v. *Supermarkets General Corp.,* 36 Conn. App. 647, 651, 652 A.2d 1047 (1995) (proper for trial court to submit to jury issue of permanency of aggravation of preexisting injury absent medical testimony on subject "as long as the nature and scope of the preexisting injury is revealed to the jury through testimony at trial").

The evidence presented in this case concerned only the existence of some preexisting injuries to Chester Olkowski's neck and back, and related primarily to his credibility and to his failure to disclose the existence of any prior injuries to his own physicians or to the defendants during discovery. We conclude, therefore, that the trial court did not abuse its discretion in determining that there was no evidence offered that reasonably would support a finding that a preexisting

condition was in fact aggravated by the automobile accident, and that the plaintiffs were not, therefore, entitled to an "eggshell plaintiff" charge.

The court's extensive charge on causation included references to the required cause and effect relationship between the accident and the claimed injuries, and a statement regarding the defendant Justin Dew's responsibility for all injuries proximately caused by his negligence, even unforeseeable injuries. Accordingly, the court's charge more than adequately apprised the jury of the issues to be determined by them, and the legal guidelines to be applied in making those determinations.

## II

The plaintiffs next claim that the trial court improperly admitted evidence of instances of alleged physical abuse by the plaintiff Chester Olkowski against the plaintiff Raymond Olkowski.

On cross-examination, the defendants elicited testimony from the plaintiffs' witness, Debra LaScala,[6] regarding instances in which Chester Olkowski inflicted physical abuse on Raymond Olkowski near the time of the accident. Specifically, the defense elicited testimony from LaScala regarding physical blows to the head that Raymond suffered at the hands of his father, as well as headaches and other stress-related symptoms Raymond suffered prior to the accident as a result of the physical abuse by his father.[7] The plaintiffs objected to the

---

[6] LaScala, whose last name was Bolduc at the time of the accident, is the mother of Raymond Olkowski and the former wife of Chester Olkowski. She was a passenger in Chester Olkowski's vehicle at the time of the accident and was a plaintiff in the original action. See footnote 1.

[7] LaScala testified that Raymond suffered physical abuse by his father on many occasions in the year prior to the accident. She stated that Raymond was hit in the face, chest and head. She further testified that she was aware of the stress in Raymond's life prior to the accident, that she had taken him to see a physician regarding headaches prior to the accident, and that

admission of this evidence on the ground that its prejudicial effect substantially outweighed any probative value it might have. After hearing argument outside the presence of the jury, the court recognized that the evidence was prejudicial to Chester Olkowski, but determined that the evidence was relevant and that its prejudicial effect did not warrant exclusion.

"The trial court is given broad discretion in determining the relevancy of evidence and its decision will not be disturbed absent a clear abuse of that discretion. . . . The trial court also has broad discretion in balancing the probative value of proffered evidence against its prejudicial effect. That discretion is subject to reversal only where an abuse of discretion is manifest or where an injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) *State* v. *Willis*, 221 Conn. 518, 522, 605 A.2d 1359 (1992).

It is axiomatic that otherwise relevant evidence may be excluded if its prejudicial effect outweighs its probative value. *Grayson* v. *Wofsey, Rosen, Kweskin & Kuriansky*, 231 Conn. 168, 193, 646 A.2d 195 (1994). As we have previously stated, however, "[e]vidence that is inadmissibly prejudicial is not to be confused with evidence that is merely damaging. . . . All evidence adverse to a party is, to some degree, prejudicial. . . . Thus, [t]o be excluded, the evidence must create prejudice that is *undue* and so great as to threaten an injustice if the evidence were to be admitted." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Berry* v. *Loiseau*, 223 Conn. 786, 806, 614 A.2d 414 (1992).

In response to the plaintiffs' motion to set aside the verdict, the trial court provided the following reasoning

approximately two months before the accident Raymond spent time at the Elmcrest Psychiatric Institute.

for its admission into evidence of the testimony regarding the alleged physical abuse: "The plaintiff Raymond Olkowski was claiming emotional injuries as well as one of—the only physical permanent injury was persistent headaches. I think the evidence was that his father had physically abused him, including blows to the head. I thought that was certainly relevant to the defendants' defense, and that's why I allowed it." The trial court concluded, therefore, that the probative value of this evidence with respect to causation and damages exceeded its prejudicial impact. We cannot conclude, on the facts of this case, that the conclusion reached by the trial court was improper.

The judgment is affirmed.

In this opinion the other judges concurred.