ELIZABETH MOJICA *v.* JOYCE BENJAMIN ET AL.
(AC 20483)

Lavery, C. J., and Flynn and O'Connell, Js.

Argued April 24—officially released July 17, 2001

*John T. Bochanis*, for the appellant (plaintiff).

*Edward W. Mayer, Jr.*, with whom, on the brief, was *Tracey M. Lane*, for the appellees (named defendant et al.).

*Karen L. Karpie*, for the appellee (defendant Carol Pulliam).

*Opinion*

FLYNN, J. The plaintiff, Elizabeth Mojica, appeals from the judgment of the trial court rendered after it denied her motion to set aside the jury's verdict for the defendants, Carol Pulliam, Joyce Benjamin and Donald Benjamin. The plaintiff commenced this action against the defendants to recover damages for personal injuries she sustained in an automobile accident. On appeal, the plaintiff contends that (1) the verdict was against

the weight of the evidence, (2) the court improperly admitted certain medical reports by an undisclosed expert witness and (3) the court improperly declined to charge the jury that the defendants had to take the plaintiff as they found her relative to a preexisting condition that resulted from a previous automobile accident. We disagree and affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The plaintiff was a passenger in Pulliam's vehicle as Pulliam proceeded along Poplar Street in Bridgeport near its intersection with Maplewood Avenue. At about the same time, a vehicle that was being driven by Joyce Benjamin was exiting from a driveway along Poplar Street. Pulliam was traveling at approximately fifteen miles per hour when Joyce Benjamin's vehicle, exiting from the driveway, struck Pulliam's vehicle on the passenger side. Vehicles were parked on Poplar Street that impeded the view of drivers proceeding along the street and exiting driveways along the street. As a result of the collision, the plaintiff suffered injuries.

The plaintiff thereafter brought this action against the defendants on the theory of negligent operation of a motor vehicle.[1] Each defendant denied the plaintiff's allegations of negligence and that such negligence had caused her personal injuries. No special defenses were interposed against the plaintiff by any party, and no interrogatories were submitted to the jury. The jury returned a general verdict in favor of all of the defendants.

Turning to the plaintiff's claims on appeal, we first note that we review the court's denial of a motion to set aside the verdict under an abuse of discretion standard. The court is vested with wide discretion in such

[1] We note that the plaintiff brought this action against Donald Benjamin as the owner of the vehicle that was driven by Joyce Benjamin.

matters, and we will not disturb the court's decision unless it has abused that discretion. *Gosselin* v. *Perry*, 166 Conn. 152, 168, 348 A.2d 623 (1974). Generally, the court should not set aside a verdict where the jury reasonably could have found as it did from the evidence before it. The court's refusal to set aside a verdict is entitled to great weight, and every reasonable presumption should be indulged in favor of its correctness. *Mather* v. *Griffin Hospital*, 207 Conn. 125, 139, 540 A.2d 666 (1988). On appeal, the evidence in the record is to be considered in a light most favorable to the parties who prevailed at trial. *Suarez* v. *Dickmont Plastics Corp.*, 242 Conn. 255, 277, 698 A.2d 838 (1997).

I

The plaintiff first claims that the verdict in favor of the defendants was against the weight of the evidence. We disagree.

On the basis of our review of the record, we conclude that a reasonable jury could have found that Pulliam did not act negligently in the operation of her vehicle. Pulliam was operating her vehicle at fifteen miles per hour, a speed that the jury reasonably could have found not unreasonably fast. The evidence further showed that Joyce Benjamin's vehicle struck Pulliam's vehicle as Joyce Benjamin was entering the street from a driveway. From such evidence, the jury reasonably could have concluded that Pulliam kept her vehicle under control. The jury also could have found that Pulliam kept a proper lookout because there was evidence that parked vehicles were obstructing the view of drivers proceeding along Poplar Street. From that evidence, the jury reasonably could have inferred that the view of even the most vigilant driver would have been obscured to the extent that a vehicle entering the street from a driveway could not be seen. Similarly, the jury could have found that Pulliam was not negligent in

failing to apply her brakes or to turn out. The jury was entitled to believe Pulliam's testimony that she never saw Joyce Benjamin's vehicle, which was obscured by parked vehicles, until after it struck her vehicle and, thus, had no opportunity to brake or turn away in avoidance of the collision. See *Opotzner* v. *Bass*, 63 Conn. App. 555, 570, 777 A.2d 718 ("[w]here an issue is disputed, it is the jury's job to weigh the evidence and to determine the credibility of conflicting testimony"), cert. denied, 257 Conn. 910, 782 A.2d 134 (2001). We conclude, therefore, that there was sufficient evidence for the jury to have found in Pulliam's favor.

Our review of the record also leads us to conclude that a reasonable jury could have found that Joyce Benjamin was not negligent in the operation of her vehicle.[2] The evidence before the jury, viewed in a light most favorable to sustaining the verdict, reveals that Joyce Benjamin inched her vehicle out of the driveway onto Poplar Street and that her view was partially blocked by parked vehicles. The jury reasonably could have found that such a slow speed was reasonably adapted to the circumstances, the manner of operation was in the exercise of reasonable control and consistent with a proper lookout, and because, under those circumstances, Joyce Benjamin did not see Pulliam's vehicle, she should not reasonably have braked or turned away to avoid the collision.

The fact that a collision occurred did not require the jury to find that one or both drivers were negligent. The court, which had heard all of the testimonial evidence at trial, found in its memorandum of decision on the plaintiff's motion to set aside the verdict that the jury,

[2] In light of our conclusion that there was sufficient evidence for the jury to decide, as it did, that Joyce Benjamin was not negligent in the operation of her vehicle, we further conclude that the jury properly determined that Donald Benjamin, as the owner of Joyce Benjamin's vehicle, was not liable for the plaintiff's injuries.

under the circumstances, was neither "compelled" nor "required" to find against Joyce Benjamin or Pulliam. We agree. The plaintiff had the burden of proving such negligence, and the jury reasonably could have found, on the basis of the evidence presented, that she did not satisfy that burden. We conclude, therefore, that the court properly determined that the evidence was sufficient for the jury to decide as it did in rendering its verdict in favor of the defendants.

## II

The plaintiff next claims that the court improperly admitted into evidence several medical reports by Donald S. Dworken, an orthopedic surgeon, who previously had treated the plaintiff. The plaintiff had sustained personal injuries in an accident in 1990 for which she brought an action after consulting Dworken. In that action, she claimed injuries to her neck and back, for which Dworken assigned a 7 to 8 percent permanent partial disability of the cervical spine, 7 percent permanent partial disability of the right shoulder and a 4 to 5 percent permanent partial disability of the lower back. The plaintiff contends that the medical reports were improperly admitted into evidence because the defendants had failed to disclose Dworken as an expert witness pursuant to Practice Book § 13-4 (4).[3] The plaintiff

[3] Practice Book § 13-4 (4) provides in relevant part: "[A]ny plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties within a reasonable time prior to trial. Each defendant shall disclose the names of his or her experts in like manner within a reasonable time from the date the plaintiff discloses experts, or, if the plaintiff fails to disclose experts, within a reasonable time prior to trial. If disclosure of the name of any expert expected to testify at trial is not made in accordance with this subsection, or if an expert witness who is expected to testify is retained or specially employed after a reasonable time prior to trial, such expert shall not testify if, upon motion to preclude such testimony, the judicial authority determines that the late disclosure (A) will cause undue prejudice to the moving party; or (B) will cause undue interference with the orderly

further contends that she was prejudiced by the defendants' late disclosure of the medical records on the eve of trial. We are not persuaded.

"Our standard of review for evidentiary matters allows the trial court great leeway in deciding the admissibility of evidence. The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done." (Internal quotation marks omitted.) *Gilliard* v. *Van-Court Property Management Services, Ltd.*, 63 Conn. App. 637, 641, 777 A.2d 745 (2001).

Prior to trial, the defendants submitted standard discovery requests to the plaintiff that included, inter alia, a request for any medical reports by any health care providers who may have treated the plaintiff in the ten years preceding the alleged accident for any conditions that were in any way similar or related to the complained of injuries in the present action. The defendants' request for production also requested written authorization from the plaintiff to copy, photograph or otherwise reproduce her medical records that were related to her claimed injuries and any injuries similar to those claimed in the action.

In a supplemental response to the defendants' request, the plaintiff responded, in part, that Dworken had treated her for injuries suffered in an automobile accident in 1990. The plaintiff also provided Dworken's treatment "notes," but not any "reports." The defendants thereafter subpoenaed Dworken's treatment file of the plaintiff and, just days before trial, discovered the medical reports at issue in this appeal. Anticipating that the defendants would attempt to admit those reports, the plaintiff filed a motion in limine to preclude

progress of trial in the case; or (C) involved bad faith delay of disclosure by the disclosing party. . . ."

the defendants from introducing any of Dworken's treatment notes or medical reports. The court conducted a thorough hearing on the plaintiff's motion at the conclusion of which the court denied the motion.

In its memorandum of decision denying the plaintiff's motion to set aside the verdict, the court found that "[c]ounsel for the plaintiff was unaware of those reports, as were the defendants, until the trial was in progress. Under such circumstances, the defendants cannot be faulted for failing to advise the plaintiff that they intended to utilize those medical reports when it was the plaintiff's obligation to provide those medical reports in the first instance and which was not done." The court thereafter denied the plaintiff's motion.

At trial, the plaintiff renewed her objection to the admissibility of the medical reports and treatment notes. The court sustained the objection as to the notes, but overruled her objection as to the reports. The court reasoned that had the plaintiff complied with the defendants' request for production asking for all medical reports, the defendants would have been in a position to disclose such information. As matters stood, however, because of the plaintiff's failure to comply fully with the defendants' request, the defendants learned of Dworken's medical reports only days before trial *and* only after the defendants had subpoenaed Dworken's complete treatment file of the plaintiff.

We cannot say that under the circumstances, the court abused its discretion in admitting the medical records into evidence. See *Ormsby* v. *Frankel*, 255 Conn. 670, 675, 768 A.2d 441 (2001) (ruling on evidentiary matters will be overturned on appeal only where there is evidence of clear abuse of discretion). It was the plaintiff's failure to deliver to the defendants an authorization to release medical records in Dworken's possession, including the medical reports at issue, cou-

pled with the plaintiff's representation to the defendants that she was providing *all* of the records, which consisted only of "notes," that deprived the defendants of any knowledge of the reports until they subpoenaed Dworken's treatment file and learned of them shortly before trial.

The plaintiff cannot reasonably claim on appeal that the defendants' untimely disclosure caused her to suffer prejudice when she substantially contributed to the complained of delay. Our conclusion is further buttressed by the admission of the plaintiff's counsel that the plaintiff was required to disclose Dworken's medical reports pursuant to the defendants' standard production request and, yet, did not do so because counsel's letter to Dworken merely requested his "treatment notes." See *Collens* v. *New Canaan Water Co.*, 155 Conn. 477, 496, 234 A.2d 825 (1967) (relevant, material admissions by counsel admissible against client). Discovery is an equitable procedure rather than a common-law procedure; *Lieberman* v. *Reliable Refuse Co.*, 212 Conn. 661, 672, 563 A.2d 1013 (1989); and should be guided by the old equitable maxim that a loss ought to fall on the person who caused it. *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, 35 Conn. App. 94, 104, 644 A.2d 933 (1994). We therefore conclude that under the circumstances of this case, the court properly allowed the defendants to submit Dworken's medical reports into evidence.

### III

Finally, we address the plaintiff's claim that the court should have given the jury her requested instruction that the defendants had to take the plaintiff as they found her, an instruction commonly referred to as "the eggshell plaintiff" charge.[4] We do not agree.

---

[4] The plaintiff requested the following charge: "The plaintiff is entitled to recover full and complete compensation for all her injuries and damage, and the effects caused by or proximately resulting from the Defendants' neglect. This is so even though her injuries and effects thereof were more severe and serious and were prolonged permanently or longer than would

"Our standard of review concerning claims of instructional error is well settled. [J]ury instructions must be read as a whole and . . . are not to be judged in artificial isolation from the overall charge. . . . The whole charge must be considered from the standpoint of its effect on the jurors in guiding them to a proper verdict . . . . The trial court must adapt its instructions to the issues raised in order to give the jury reasonable guidance in reaching a verdict and not mislead them." (Citations omitted; internal quotation marks omitted.) *Mauro* v. *Yale-New Haven Hospital*, 31 Conn. App. 584, 592–93, 627 A.2d 443 (1993).

The court did not charge the jury as requested, but rather provided the following relevant instruction: "[There has] also been evidence with respect to some [spinal] stenosis and opinions expressed to that with respect to the doctor as to where it came from. The plaintiff is entitled to reasonable—fair, just and reasonable compensation for any injuries if they were caused by the negligence of the defendants, even though the injury, or the effects thereof, might be more serious because of the plaintiff's background; thus, if you find any negligence on the part of any defendant is a substantial factor in producing the injuries to the plaintiff, the plaintiff would be entitled to compensation for those injuries. If you find that any negligence on the part of the defendants was not a substantial factor in producing any such injuries, the plaintiff would not be entitled to compensation for any such injuries."

---

otherwise have been because of her pre-existing condition of health at the time of the accident. There has been testimony in this case to the effect that the Plaintiff has a prior injury to her neck and back which may have been aggravated or lighted up by this incident and which caused her damages.

"In other words, the Defendants take the Plaintiff as they find her. The Defendants are chargeable with all the results of the injuries proximately caused by their neglect or flowing from their negligence and the Defendants cannot now excuse these results by saying that the Plaintiff had a pre-existing condition which would make her suffer more and longer or cause her to be more severely injured." (Citations omitted.)

We must emphasize that there is a distinction between, on the one hand, cases in which a plaintiff claims that an allegedly negligent defendant has *aggravated* an injury or *lighted up* previous but dormant injuries and, on the other hand, those cases in which a plaintiff alleges that the defendant has *actually caused all* of the complained of injuries. In her complaint, the plaintiff asserted that "[a]s a direct result" of the defendants' negligence, she sustained injuries to her back and neck. She did not plead that the defendants' alleged negligence aggravated or lighted up any prior injuries. In fact, the plaintiff testified that although she was injured in an automobile accident in 1990, she had recovered from those injuries.[5] When asked by defense

[5] On direct examination by her attorney, the plaintiff testified in relevant part:

"Q. Ms. Mojica, prior to this accident, did you ever injure your neck or back, prior to May 22, 1993?

"A. Yes.

"Q. All right. When was that?

"A. In 1990.

"Q. And what caused the injury to your neck and back?

"A. An accident.

"Q. What type of accident?

"A. A car accident.

\* \* \*

"Q. You obviously have experienced the injury from the 1990 incident and 1993; are they different?

"A. Yes, they are.

"Q. And how are they different, Ms. Mojica?

"A. Dr. Dworken was treating me for my shoulders and once in awhile when I had a headache.

"Q. All right. Did he also treat you for your back and neck, though?

"A. A little bit; and I believe the top part of my back.

"Q. All right."

The plaintiff then explained how her injuries sustained in the May 22, 1993 accident, the subject of the present action, differed from those sustained in the 1990 accident:

"A. I have more—I have damage to my lower back, all right? And with the headaches, that's injuries to my neck, which is worse than what I had with Dworken. Dworken was just my shoulder; he treated my shoulders mostly. And I had a cortisone shot in my right shoulder.

"Q. All right. Okay, so he treated mostly your shoulder, you indicate, right?

counsel whether she was claiming the same injuries as she had in the action related to the 1990 accident, the plaintiff replied, "[n]o, but this one here is worse."

As with the evidence in the record, the closing argument of the plaintiff's counsel was consistent with the

"A. Right.

"Q. But he did treat your neck and back some also, Dr. Dworken?

"A. Right, yes; mm-hmm.

\* \* \*

"Q. All right. On the date that you were involved in the injury on May 22, 1993, did you have any type of pain or did you feel any type of symptoms from your injury of 1990?

"A. I had lots of pain and my body was different.

\* \* \*

"Q. Okay. But, no; I guess what I'm asking is, on the date of this—in May of 1993, okay, did you have any pain from your old injury of 1990?

"A. No.

"Q. Okay. Had you recovered from that?

"A. Yes. Yes."

On cross-examination by the defendants' attorney, the plaintiff further testified in relevant part:

"Q. Ms. Mojica, you testified earlier that you have no problems with your neck and back before this accident in 1993; is that right?

"A. Right.

"Q. But you did have a prior motor vehicle accident in 1990?

"A. Yes, I did. . . .

"Q. Okay. And Dr. Dworken's reports . . . [indicate] that he treated you for your neck, back and shoulders.

"A. Right.

"Q. Okay. And isn't it true at that time you already have problems with sitting, squatting and bending, kneeling?

"A. Not that much.

"Q. Okay. Well did you have a permanent injury from the 1990 accident?

"A. Not that I know of, no.

\* \* \*

"Q. Did you ever tell Dr. [Paul] Carpenter about the prior accident that you were involved in?

"A. No, I didn't at the time, no.

"Q. Well, did you ever tell him?

"A. I think probably later I told him, but I was so sick when I went to see him, I didn't even think about my other one.

\* \* \*

"Q. You didn't think you had any permanent injury in the 1990 accident?

"A. No."

theory that the plaintiff's injuries were caused by the May, 1993 accident. Counsel argued to the jury, in relevant part, that "the defendants would like to have you believe that the injuries she suffered from this May 22, 1993 incident are related somehow to the 1990 incident . . . . Dr. [Paul] Carpenter, on the other hand, indicates that the injuries to her body, to the low back and to the neck, are directly related to this incident, directly related to the May 22, 1993 incident. I think, after listening to the evidence, you could reasonably conclude that the injuries were related to this May 22, 1993 incident."

Our law regarding the giving of an eggshell instruction was epigrammatically summed up in *Olkowski* v. *Dew*, 48 Conn. App. 864, 868, 713 A.2d 264, cert. denied, 246 Conn. 901, 717 A.2d 239 (1998), wherein Judge Dupont, writing for the court, stated: "In this case, the plaintiffs concede that the aggravation of a preexisting injury was not a theory of the amended complaint, but rely on the case of *Bruneau* v. *Quick*, 187 Conn. 617, 633, 447 A.2d 742 (1982), in support of the position that they were entitled to the preexisting injury charge despite the fact that the aggravation of a preexisting injury was not a theory of the case. In *Bruneau*, the defendant claimed that the trial court improperly provided the jury with a preexisting injury or 'take the plaintiff as you find him' charge because the aggravation of a preexisting injury was not a theory of the plaintiff's case and there had been ' "absolutely no testimony which suggested that this condition . . . had been aggravated." . . .' Id. In *Bruneau*, the trial court determined and our Supreme Court affirmed that there was, in fact, evidence from which the jury reasonably ' "could find or infer that the effect on this particular [p]laintiff of some of the claimed injuries may be different in degree because she had a [preexisting] condition than if she didn't." ' Id., 634." *Olkowski* v. *Dew*, supra, 868–69.

In the present case, the plaintiff did not plead that the defendants' alleged negligence aggravated any pre-existing injuries. She testified that she had recovered from the injuries sustained in the 1990 accident prior to being injured in the 1993 accident between Pulliam and Joyce Benjamin. Additionally, the evidence presented at trial indicated that the "vast majority" of the plaintiff's spinal stenosis was the direct result of the 1993 accident. The record does not disclose whether the plaintiff had the condition prior to the 1993 accident. The court, therefore, was not required to charge in exactly the way the plaintiff requested. The charge, as given, adequately permitted the jury to consider whether the injuries caused by the defendants' alleged negligence were made more severe by virtue of the plaintiff's earlier injuries and that the defendants would still be liable for them. We therefore reject the plaintiff's claim. The court acted well within its discretion when it refused to set aside the verdict.

The judgment is affirmed.

In this opinion the other judges concurred.