MICHAEL E. GRECI ET AL. *v.* THOMAS J. PARKS
(AC 28949)
(AC 29922)
(AC 30013)

Bishop, Harper and Foti, Js.

Argued March 18—officially released October 27, 2009

*Juri E. Taalman,* with whom, on the brief, was *Timothy Brignole,* for the appellants (plaintiffs).

*Anthony F. Santacroce,* with whom was *Deborah L. Bradley,* for the appellee (defendant).

*Opinion*

HARPER, J. The plaintiffs, Michael E. Greci and Margaret A. Greci, brought an action against the defendant, Thomas J. Parks, for injuries they claimed they sustained as the result of an automobile accident caused by the defendant's negligence. The case was tried to the jury, which returned a plaintiff's verdict in favor of Michael Greci and a defendant's verdict with respect to the claim of Margaret Greci. The plaintiffs appeal from the judgment of the trial court, rendered in accordance with the jury's verdicts, and the denial of their postverdict motions. On appeal, the plaintiffs claim that the court (1) improperly determined that the final judgment in this case was rendered on August 17, 2007, rather than June 8, 2007, and (2) abused its discretion in denying their motions to set aside the verdicts and for a new trial or, in the alternative, for additur, because (a) the court improperly had permitted the defendant to cross-examine Michael Greci with respect to certain medical records that were unrelated to his claimed injuries, (b) the court permitted the defendant's counsel to make improper arguments to the jury and failed to deliver a requested curative instruction related to the

improper closing arguments, and (c) the verdicts were inconsistent. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The plaintiffs were married in 1974 and subsequently bought a home in Granby. Prior to and throughout their marriage, Michael Greci was involved in the business of auto racing. In January, 1999, he accepted a position that required him to move to North Carolina. From that time until June, 2000, he lived in North Carolina while Margaret Greci lived in Connecticut with their two children. He would return to Granby whenever he could, and she sometimes attended his races. In the summer of 1999, she spent three weeks with him in North Carolina.

In June, 2000, Michael Greci moved back to Granby. In the fall of 2000, he accepted a position with a company in New Jersey and lived there between 2000 and 2003. He returned to Connecticut almost every weekend during that time period. In April, 2003, the plaintiffs moved to North Carolina, and he accepted a position with his current employer, Dale Earnhardt, Inc. His present position requires him to travel with the race team approximately twenty-eight to thirty-seven weeks during the year.

In November, 2003, the plaintiffs came back to Connecticut to attend the funeral of Michael Greci's great aunt. On the afternoon of November 25, 2003, they were traveling westbound on Interstate 84 in Cheshire when traffic ahead of them slowed and then stopped. A few moments after the plaintiffs' vehicle came to a stop, the defendant's vehicle hit their vehicle from behind and pushed it into the vehicle in front of them. The plaintiffs' vehicle was towed from the scene. The plaintiffs, who had been traveling back to their home in North Carolina when the accident occurred, leased another vehicle that day and continued on their way.

As the day progressed, Michael Greci experienced increasing pain and discomfort in his right arm and shoulder. On November 28, 2003, he went to Edward S. Campbell, his local family practitioner, for medical treatment. In December, 2003, Campbell diagnosed him with a herniated or ruptured disc in his neck and referred him to Vinay Deshmukh, a neurosurgeon. Deshmukh diagnosed him with cervical radiculopathy and disc herniation, and recommended a discectomy and fusion. Deshmukh opined that the accident either caused his condition or exacerbated an asymptomatic condition. Deshmukh had not reviewed Campbell's notes or records prior to his treatment of Michael Greci.

The surgery was performed on April 12, 2004. In May, 2005, Michael Greci returned to Deshmukh again complaining of neck pain. Although Deshmukh did not recommend additional surgery at that time, he did indicate that there was a 30 percent chance of future surgery within five years and a 50 percent chance of surgery for a further fusion within ten to fifteen years.

On August 22, 2005, the plaintiffs filed this action, claiming that the defendant's negligent operation of his vehicle caused Michael Greci to sustain economic and noneconomic damages and deprived Margaret Greci of her husband's consortium. In his answer to the complaint, the defendant admitted the allegation that he failed to keep a proper lookout for other motor vehicles traveling on the roadway but denied the other allegations of negligent conduct. With respect to the allegations of claimed injuries caused by the accident, the defendant pleaded insufficient knowledge and left the plaintiffs to their proof.

On February 15, 2007, after a four day trial, the jury returned a verdict awarding Michael Greci $217,795 in economic and noneconomic damages. With respect to Margaret Greci's loss of consortium claim, the jury

returned a defendant's verdict. On February 20, 2007, the defendant filed a request for a collateral source hearing. On February 22, 2007, the plaintiffs filed motions to set aside the verdicts and for a new trial and motions for additur. The court held a hearing on the postverdict motions on April 16, 2007. At that time, the court heard argument on all of the motions except the request for a collateral source hearing. At the request of the defendant's counsel, after the plaintiffs' counsel indicated that he had no objection, the court continued the hearing on that motion to an unspecified date.

The court denied all of the plaintiffs' postverdict motions in a memorandum of decision filed June 8, 2007. The plaintiffs filed an appeal, AC 28949, on June 28, 2007. On July 6, 2007, the defendant filed a motion to dismiss the appeal with this court, claiming that the appeal was premature because the collateral source hearing had not yet been scheduled.

The defendant then filed a motion to open the judgment with the trial court on July 16, 2007, on the ground that his request for a collateral source hearing was still pending. The court granted the defendant's motion to open the judgment, and a hearing was held on August 17, 2007, at which the court denied the defendant's request for a collateral source hearing and stated that "the judgment remains as previously determined."[1] The plaintiffs did not appeal from that judgment. Thereafter, on October 3, 2007, this court granted the defendant's motion to dismiss AC 28949 as to the portion of the plaintiffs' appeal that related to Michael Greci but denied the motion as to the portion of the appeal that related to Margaret Greci.

---

[1] The court did not create a mootness problem as to AC 28949 when it granted the defendant's motion to open the judgment because it did not alter the jury's verdicts in any way. See RAL Management, Inc. v. Valley View Associates, 278 Conn. 672, 691–92, 899 A.2d 586 (2006).

On February 1, 2008, the plaintiffs filed a motion to open the judgment in order to obtain "a clear and unequivocal final judgment from which [Michael Greci] can properly appeal." In response to that motion, the court issued an order on April 28, 2008, in which it stated that judgment had been rendered on August 17, 2007, when the defendant's request for a collateral source hearing was denied. On May 15, 2008, Michael Greci filed an appeal, AC 29922, from the judgment rendered on the jury's verdicts and the court's June 8, 2007 denial of the plaintiffs' postverdict motions. The defendant filed a motion to dismiss the appeal with this court on May 23, 2008, claiming that the appeal was not timely. We denied the defendant's motion to dismiss AC 29922 on July 16, 2008.

On June 17, 2008, Michael Greci filed an additional appeal, AC 30013, from the court's order of April 28, 2008.[2] On July 17, 2008, the defendant moved to dismiss AC 30013 on the grounds that it was untimely and had not been taken from a final judgment. This court denied the motion to dismiss AC 30013 on August 14, 2008.

Subsequently, by order issued August 18, 2008, we consolidated AC 28949, AC 29922 and AC 30013 pursuant to Practice Book § 61-7.

I

The plaintiffs first challenge this court's decision to dismiss AC 28949 as to the portion of the appeal that related to Michael Greci. They argue that judgment was rendered on June 8, 2007, and not, as the trial court determined, on August 17, 2007, when the defendant's request for a collateral source hearing was denied.

[2] The plaintiffs filed a number of motions with the trial court and this court between August, 2007, and July, 2008, requesting, inter alia, reconsideration of various rulings and seeking to establish the date of the final judgment.

On October 3, 2007, this court granted the defendant's motion to dismiss as to "the portion of the plaintiffs' appeal as to . . . Michael Greci . . . ." By order dated November 14, 2007, we denied the plaintiffs' motion to reconsider that dismissal. The plaintiffs filed a petition for certification to appeal from our partial dismissal of AC 28949 with our Supreme Court, which was denied on January 23, 2008. Therefore, we will not review the plaintiffs' first claim that the dismissal was improper. See *Lazorik* v. *Donaldson*, 65 Conn. App. 537, 783 A.2d 489 (2001).

Although AC 28949 was partially dismissed as to the claims of Michael Greci, he has raised the same claims in AC 29922, filed on May 15, 2008, that he raised in AC 28949. Those claims are now before this court. The defendant challenges, however, our denial of his motion to dismiss AC 29922 as well as our denial of his motion to dismiss AC 30013. He claims that those appeals were untimely and were not taken from a final judgment. We already have reviewed the claims in the defendant's motions to dismiss, however, and will not review the same issues again. See *Santoro* v. *Santoro*, 33 Conn. App. 839, 841–42, 639 A.2d 1044 (1994). Contrary to the defendant's argument, we have subject matter jurisdiction and will review the claims of both plaintiffs.

II

The plaintiffs claim that the court abused its discretion in denying their motions to set aside the verdicts and for a new trial or, in the alternative, in denying their motions for additur. Specifically, they argue that the court should have granted their postverdict motions because the court improperly permitted the defendant to cross-examine Michael Greci about medical records that were unrelated to his claimed injuries, and it permitted the defendant's counsel to make improper arguments to the jury and failed to deliver a requested

curative instruction related to those arguments. They claim that the prejudice they suffered was evidenced by the inadequate damage award to Michael Greci and the defendant's verdict on Margaret Greci's derivative claim for loss of consortium. The plaintiffs further claim that the verdicts were inconsistent.

We begin by setting forth our standard of review. "The standard of review governing our review of a trial court's denial of a motion to set aside the verdict is well settled. The trial court possesses inherent power to set aside a jury verdict which, in the court's opinion, is against the law or the evidence. . . . [The trial court] should not set aside a verdict where it is apparent that there was some evidence upon which the jury might reasonably reach [its] conclusion, and should not refuse to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles . . . . Ultimately, [t]he decision to set aside a verdict entails the exercise of a broad legal discretion . . . that, in the absence of clear abuse, we shall not disturb." (Internal quotation marks omitted.) *Embalmers' Supply Co.* v. *Giannitti*, 103 Conn. App. 20, 32–33, 929 A.2d 729, cert. denied, 284 Conn. 931, 934 A.2d 246 (2007).

## A

The plaintiffs' first claim is that the court improperly allowed the defendant's counsel to cross-examine Michael Greci on medical records predating the accident that were unrelated to his claimed injuries. The subject reports were contained in the files of Campbell, the plaintiffs' medical expert, that had been disclosed to the defendant shortly before or during trial. Those reports indicated that Michael Greci had been treated by various physicians between 1997 and 2002 for right hand, forearm, elbow and shoulder pain, weakness in

his grip, rotator cuff tendonitis and insomnia.[3] The court allowed the defendant to identify the authors of the reports as experts,[4] submit the reports in evidence and cross-examine Michael Greci as to their contents.

The plaintiffs argue that the defendant, instead of questioning Campbell on the reports predating the accident, chose "to ambush" Michael Greci by cross-examining him about prior treatments that were wholly unrelated to the accident. They claim that the court improperly permitted irrelevant and immaterial medical treatment testimony without any foundation to establish that the prior treatment was related in any way to the injuries claimed by Michael Greci in this case.

In its memorandum of decision on the postverdict motions, the court addressed the issue of the medical records as follows: "The court allowed the late disclosure of the authors of the reports as experts because of the plaintiffs' late disclosure of this information to the defendant. The information in the reports also related to the same body parts claimed to be involved in [Michael Greci's] injuries from the accident here. The plaintiff cannot now claim prejudice from such a late disclosure where his actions contributed to the failure to have

---

[3] Michael Greci testified that, as a result of the accident on November 25, 2003, he experienced pain that went down his neck, across the top of his shoulder and down through the back of his right arm, radiating down to his right hand and fingers. He complained that his grip strength in his right hand had weakened and that he suffered from insomnia and depression.

[4] One of the plaintiffs' issues on appeal is that the court improperly permitted the defendant to disclose the plaintiffs' expert as his own expert during the course of the trial. The plaintiffs have provided this court with partial transcripts of the proceedings. We do not have a transcript in which the defendant requested to disclose Campbell as the defendant's expert, with an objection by the plaintiffs' counsel to the disclosure. The only reference to transcript proceedings with respect to this issue is a reference to the hearing on the postverdict motions. It is the appellants' responsibility to provide an adequate record for review. See Practice Book § 61-10. The record is inadequate for us to review this claim.

the material disclosed earlier to counsel. See *Mojica* v. *Benjamin*, 64 Conn. App. 359, 780 A.2d 201 (2001)."

"Our standard of review for evidentiary matters allows the trial court great leeway in deciding the admissibility of evidence. The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done." (Internal quotation marks omitted.) *Gilliard* v. *Van-Court Property Management Services, Ltd.*, 63 Conn. App. 637, 641, 777 A.2d 745 (2001). We cannot conclude that, under the stated circumstances, the court abused its discretion in admitting the preaccident medical records into evidence and allowing the defendant to cross-examine Michael Greci as to the contents of those records with respect to his prior medical treatment.

B

The plaintiffs next claim that the court should have set aside the verdicts and ordered a new trial because it permitted the defendant's counsel to display a lottery ticket and make improper comments about winning the lottery and the funding of retirement plans during his closing argument to the jury. The plaintiffs also claim that the court failed to deliver a requested curative instruction related to these improper arguments. The plaintiffs argue that the conduct and comments were calculated to inject extraneous issues into the case and to inflame the jury.

The challenged remarks followed the initial closing argument of the plaintiffs' counsel, in which he suggested an approach to the valuation of economic damages and noneconomic damages for Michael Greci's injuries. By the suggested calculation of the plaintiffs' counsel, Michael Greci's economic damages totaled $145,900, and his noneconomic damages approximated $2 million. In response, the defendant's counsel

remarked: "I will say that since it's not a complicated case, that the case is not worth anywhere near a million dollars. I'm also going to suggest to you that with those figures, it's the equivalent of Lotto, and what [the] plaintiffs' counsel thinks is that it's easier for him to pick six of you who will award a million dollars than it is to get a Lotto ticket and win a million dollars. I suggest to you if he wants a million dollars or anything near that, go buy a Lotto ticket. But lotteries and Lotto have nothing to do with fair, just and reasonable awards and to be in courthouses."

Toward the end of his closing argument, the defendant's counsel made additional remarks that also are challenged on appeal: "The last thing I wanted to say to you was that the judge is going to tell you that the award is not to punish the defendant nor is it to reward the plaintiff. And the figures [that the plaintiffs' counsel is] talking about [are] just that: it's something to punish the defendant and something to reward the plaintiff. I made an analogy a minute ago to say that this is not Lotto, it's not a lottery, nor should it be a retirement plan. What [the plaintiffs' counsel] is asking for, essentially, is more money than most people end up with in their retirement plan after a lifetime of working, and I suggest to you [that the defendant], by virtue of being in this accident, should not be asked to fund, he should not be asked to pay for a retirement plan for [Michael] Greci."[5] During his rebuttal argument, the plaintiffs' counsel made several references to the analogy by the defendant's counsel to winning the lottery.

During closing arguments by the defendant's counsel, the plaintiffs' counsel did not object to any of the arguments challenged on appeal or the display of the lottery

---

[5] The plaintiffs' counsel represented to this court that at some point when the references to Lotto and the lottery were being made, the defendant's counsel displayed a lottery ticket. We cannot determine from the record when this conduct occurred because no one drew attention to the display being made at the time that it happened.

ticket.[6] The plaintiffs' counsel did not object to the argument or the display of the lottery ticket at the conclusion of the closing arguments, prior to the court's jury charge or immediately after the court delivered its jury charge.

Our review of the record reveals that closing arguments occurred on Friday, February 9, 2007. The court charged the jury on that day. On Tuesday, February 13, 2007, the plaintiffs filed a motion for a curative instruction. The plaintiffs argued therein that, by displaying a lottery ticket, the defendant's counsel improperly had shown to the jury a document extrinsic to the evidence. Further, the plaintiffs argued that the argument related to the lottery improperly had impugned Michael Greci's credibility and integrity. Essentially, the plaintiffs asked the court to instruct the jury that the conduct and argument by the defendant's counsel in this regard was improper and that the jury was to disregard the argument. Because of an intervening holiday and inclement weather, the jury did not return for deliberations until Thursday, February 15, 2007, nearly one week after the challenged remarks had been made. The court denied the plaintiffs' motion at that time.[7]

In their motion to set aside the verdicts, the plaintiffs claimed, inter alia, that the court improperly had permitted the defendant's counsel to deliver the arguments

---

[6] In their appellate brief, the plaintiffs criticize the court for not admonishing the defendant's counsel sua sponte. Although this fact is noteworthy, we are mindful that, in the absence of an objection by the plaintiffs' counsel, the court may have been reluctant to draw attention to the argument. "[T]he court cannot presume to determine when a failure to object is tactical and when it is not." (Internal quotation marks omitted.) *Murray* v. *Taylor*, 65 Conn. App. 300, 317, 782 A.2d 702, cert. denied, 258 Conn. 928, 783 A.2d 1029 (2001).

[7] The plaintiffs have not provided this court with a transcript of their counsel's arguments on their motion for a curative charge. We therefore do not know the nature or extent of the argument advanced by the plaintiffs' counsel, the response by the defendant's counsel or the comments made by the trial court at that time.

concerning the lottery and the funding of the plaintiffs' retirement package. The plaintiffs also claimed that the court improperly had denied their request for a curative instruction. The court rejected these claims on their merits in its memorandum of decision concerning the plaintiffs' postverdict motions, filed on June 8, 2007. The court determined that the challenged arguments were a fair response to the arguments advanced by the plaintiffs' counsel concerning a proper award of damages in this case. The court, recalling its instructions to the jury that the arguments of counsel were not evidence and that the jury was to determine what award, if any, was just, also rejected the plaintiffs' claim that the remarks and conduct of the defendant's counsel were unfairly prejudicial.

The court articulated its reasons for its decision not to give the requested curative instruction at the hearing on the postverdict motions[8] and in its memorandum of decision filed on June 8, 2007. In that decision, the court deemed it significant that the plaintiffs' counsel had not objected to the arguments of the defendant's counsel at the time that they occurred. The court stated that it had "denied the plaintiffs' request, finding that because of the lapse of time, such a curative instruction would serve more to highlight the alleged improper remarks than to lessen their prejudicial impact, if any."

---

[8] Following the argument of the plaintiffs' counsel that the verdicts should be set aside because the court failed to give the requested curative charge, the court stated: "I thought that if I raised the issue again in a correcting charge, it almost highlighted it. You know, I think I have to kind of balance between highlighting something that might have been in error or just letting it go and assuming that the jury, you know, wasn't going to pay attention to it in the scheme of things.

"And if I highlight it again, and say, disregard the lottery issue—I don't remember the retirement comment, but the lottery issue, I remember that, I think I was concerned that it would almost highlight the issue more than— you know, that could have—may not have been in the plaintiffs' best interest to do that, but, you know, I think that was one of the concerns that I had, because of the length of time that was involved between what happened and when you asked for the charge."

In civil cases, an objection to the closing argument of opposing counsel is timely and not waived if it is made "at the time [the remarks] were made or at the close of the argument . . . ." *Cascella* v. *Jay James Camera Shop, Inc.*, 147 Conn. 337, 343, 160 A.2d 899 (1960). Here, such a timely objection did not occur; the plaintiffs waited until the jury was deliberating to request a curative instruction. Under these circumstances, we conclude that the plaintiffs waived their right to press the claim of error that the argument of the defendant's counsel affected the fairness of the proceeding. See id.; *Medes* v. *Geico Corp.*, 97 Conn. App. 630, 635–36, 905 A.2d 1249, cert. denied, 280 Conn. 940, 912 A.2d 476 (2006); *Trumpold* v. *Besch*, 19 Conn. App. 22, 30, 561 A.2d 438 ("absence of any objection or exception to improper argument, which we may infer from the absence of any such indication in the transcript, has . . . been regarded as a waiver of the right to press such a claim of error" [internal quotation marks omitted]), cert. denied, 212 Conn. 812, 565 A.2d 538 (1989), cert. denied, 494 U.S. 1029, 110 S. Ct. 1476, 108 L. Ed. 2d 613 (1990). Accordingly, we decline to review that claim.[9] The plaintiffs also claim that the court

[9] Even if we were to reach the merits of the plaintiffs' claim, we would conclude that the court, which had a superior vantage point from which to assess the atmosphere of the trial and the effect of the challenged argument, did not abuse its discretion in denying the motion to set aside the verdicts on this ground. We are not persuaded that the remarks and conduct of counsel exceeded the bounds of fair argument. Rather, we consider the remarks to have been a rhetorical device, used by counsel in the heat of argument, in an attempt to persuade the jury that the award advocated by the plaintiffs' counsel far exceeded just and reasonable compensation for Michael Greci's injuries.

Furthermore, in light of the arguments as a whole and the court's charge, we are not persuaded that, if the remarks were improper, they affected the fairness of the trial. Accordingly, we distinguish this case from *Yeske* v. *Avon Old Farms School, Inc.*, 1 Conn. App. 195, 196, 470 A.2d 705 (1984), in which the trial court granted the defendant's motion to set aside the plaintiffs' verdict on several grounds, including the prejudicial statements made by the plaintiffs' counsel in his rebuttal argument. This court concluded that the trial court did not abuse its discretion in setting aside the verdict

improperly denied their motion for a new trial because it failed to deliver the curative instruction that they had requested. Under the circumstances explained by the court and for the reasons stated in its decision, we conclude that the court soundly exercised its discretion in denying the plaintiffs' request and denying the motion for a new trial on this ground.

## C

The plaintiffs next claim that the court improperly denied their motions to set aside the verdicts and for a new trial because the two verdicts were inconsistent. Specifically, they argue that the jury was required to return a plaintiff's verdict in favor of Margaret Greci on her derivative loss of consortium claim because the defendant had admitted liability for the collision and the jury had awarded Michael Greci economic and noneconomic damages. We disagree.

Although the defendant admitted that he failed to keep a proper lookout for other motor vehicles at the time of the accident, he did not admit that the injuries claimed by the plaintiffs were caused by that negligent conduct. "No matter how negligent a party may have been, if his negligent act bears no relation to the injury,

because the remarks "went far beyond the boundaries of legitimate comments made during the heat of forensic warfare." Id., 204. We concluded that no curative instruction by the trial court could have remedied their maliciousness.

"There are occasions when there is no possibility that any instruction will be curative . . . and in *such exceptional cases*, the verdict should be set aside and a new trial ordered, regardless of whether the opposing party took exception to the remarks." (Citation omitted; emphasis added.) Id. Because the trial court had observed the courtroom behavior of the plaintiffs' counsel and deemed it to be prejudicial to the defendants and because it is singularly the trial court's function to assess whether an injury has been done after appraising the atmosphere prevailing in the courtroom, we concluded that the court did not abuse its discretion in setting aside the verdict under the circumstances of that case. Id., 204–205. The present case, unlike *Yeske*, is not *such an exceptional case*.

it is not actionable." *Shegog* v. *Zabrecky*, 36 Conn. App. 737, 745, 654 A.2d 771, cert. denied, 232 Conn. 922, 656 A.2d 670 (1995). "[A] plaintiff must establish all of the elements of a negligence claim, including causation and actual injury, in order to recover and, therefore, the technical legal injury concept does not apply to a negligence action." *Right* v. *Breen*, 277 Conn. 364, 370, 890 A.2d 1287 (2006).[10]

In the present case, Margaret Greci claimed loss of her husband's consortium as a result of the defendant's negligence in causing the motor vehicle accident on November 25, 2003. Loss of consortium, first recognized as a cause of action in Connecticut in *Hopson* v. *St. Mary's Hospital*, 176 Conn. 485, 408 A.2d 260 (1979), is defined as "the loss of services, financial support, and the variety of intangible relations that exist between spouses living together in marriage. . . . The intangible components of consortium are the constellation of companionship, dependence, reliance, affection, sharing and aid which are legally recognizable, protected rights arising out of the civil contract of marriage." (Citation omitted; internal quotation marks omitted.) *Shegog* v. *Zabrecky*, supra, 36 Conn. App. 751.

The plaintiffs have cited no authority to support their argument that a jury must award damages for a loss of consortium claim if it awards damages to an injured spouse. Here, it was not inconsistent for the jury to have found that Michael Greci suffered economic and

---

[10] The issue in that certified appeal to our Supreme Court was "whether a plaintiff in a negligence action must be awarded nominal damages, thereby making the defendant potentially liable for costs, when the defendant admits liability but denies having caused the alleged injury, and the fact finder thereafter concludes that the plaintiff failed to prove that he suffered any injury as a result of the defendant's conduct." *Right* v. *Breen*, supra, 277 Conn. 365–66. The court concluded that "a plaintiff bringing an action in negligence is not entitled to nominal damages, as a matter of law, when the defendant has admitted liability but has denied having caused actual injury, and the jury awards no damages to the plaintiff." Id., 366.

noneconomic damages as the result of the collision but that Margaret Greci either was not deprived of her husband's consortium or that any loss of consortium she may have suffered was not the result of the collision. The evidence presented at trial revealed that Michael Greci's employment kept him away from home for significant periods of time. At certain times during the marriage, Margaret Greci lived in Connecticut while Michael Greci was living in North Carolina and New Jersey. The jury reasonably could have concluded that the plaintiffs essentially were living separate lives at the time the accident occurred and that they did not spend much time together or engage in many mutual activities, given his demanding work schedule and travel requirements. We conclude that it was not necessarily inconsistent for the jury to find that Michael Greci met his burden of proof with respect to his claim of damages but that Margaret Greci failed to sustain her burden of proving her loss of consortium claim.

We further note that at no time did the plaintiffs object to a defendant's verdict form and a plaintiff's verdict form being provided to the jury with respect to the claims of Michael Greci and Margaret Greci. Although the plaintiffs have not provided this court with a transcript of the court's charge to the jury, they do include the court's proposed charge in the appendix to their appellate brief. In that proposed charge, the court discussed the verdict forms and informed the jury that if it found that the plaintiffs had failed to prove that the defendant's negligence was the legal cause of Michael Greci's injuries and losses, the jury would have to complete both defendant's verdict forms because Margaret Greci's right to recover was dependent on her husband's claim. The court then instructed the jury that if it returned a verdict in favor of Michael Greci, it then should consider Margaret Greci's claim for loss of consortium. The proposed instruction also provided:

"If you find that she did not meet her burden of proof on this claim, you would complete the defendant's verdict [form] as to . . . Margaret Greci."

The record does not reflect any objection being made by the plaintiffs to the submission of those verdict forms or the charge the court gave with respect to the completion of those forms. Further, in his closing argument, the plaintiffs' counsel referred to the defendant's verdict form. If, as the plaintiffs now claim, the defendant's admission of liability precluded anything but the return of verdicts in favor of both plaintiffs, an objection should have been raised at the point when corrective actions, if necessary, could have been taken. "[P]arties [are required] to raise an objection, if possible, when there is still an opportunity for the trial court to correct the proposed error. . . . When we speak of correcting the claimed error, we mean when it is possible during that trial, not by ordering a new trial. We do not look with favor on parties requesting, or agreeing to, an instruction or a procedure to be followed, and later claiming that that act was improper." (Internal quotation marks omitted.) *Macy* v. *Lucas*, 72 Conn. App. 142, 158, 804 A.2d 971, cert. denied, 262 Conn. 905, 810 A.2d 272 (2002).

D

The plaintiffs also claim that the court improperly denied their motions for additur. The plaintiffs claim that the court should have increased the awards to Michael Greci and Margaret Greci because the jury's verdicts as to both plaintiffs were so inadequate as to compel the conclusion that the jury was influenced by partiality or mistake.

The claim as to Margaret Greci merits little discussion. The jury returned a defendant's verdict as to her

claim for loss of consortium. General Statutes § 52-228b[11] applies only to a verdict for a plaintiff that may be deemed to be inadequate. "A court may not order an additur to a defendant's verdict." *Powers* v. *Farricelli*, 43 Conn. App. 475, 480, 683 A.2d 740, cert. denied, 239 Conn. 954, 688 A.2d 326 (1996). The court properly denied the motion for additur filed by Margaret Greci.[12]

With respect to Michael Greci, the jury returned a verdict in his favor in the amount of $117,795 in economic damages and $100,000 in noneconomic damages. He claims that the jury's award of $100,000 in noneconomic damages was so inadequate that the court's denial of his motion for additur was an abuse of its discretion. "In reviewing the action of the trial court in denying [a motion for additur and] . . . to set aside [a] verdict, our primary concern is to determine whether the court abused its discretion and we decide only whether, on the evidence presented, the jury could fairly reach the verdict [it] did. . . . Our task is to determine whether the total damages awarded falls somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case . . . ." (Internal quotation marks omitted.) *Hunte* v. *Amica Mutual Ins. Co.*, 68 Conn. App. 534, 541, 792 A.2d 132 (2002).

---

[11] General Statutes § 52-228b provides: "No verdict in any civil action involving a claim for money damages may be set aside except on written motion by a party to the action, stating the reasons relied upon in its support, filed and heard after notice to the adverse party according to the rules of the court. No such verdict may be set aside solely on the ground that the damages are excessive unless the prevailing party has been given an opportunity to have the amount of the judgment decreased by so much thereof as the court deems excessive. No such verdict may be set aside solely on the ground that the damages are inadequate until the parties have first been given an opportunity to accept an addition to the verdict of such amount as the court deems reasonable."

[12] At the hearing on the postverdict motions held on April 16, 2007, the court denied Margaret Greci's motion for an additur after the plaintiffs' counsel acknowledged that the court could not add damages to a defendant's verdict. Nevertheless, that claim was pursued in these appeals.

In determining whether to grant Michael Greci's motion for an additur, the court was not to assume that the jury made a mistake but to suppose that the jury did exactly what it intended to do. See *Schettino* v. *Labarba*, 82 Conn. App. 445, 449, 844 A.2d 923 (2004). It is well settled that the amount of a damage award is a matter peculiarly within the province of the fact finder. *Hughes* v. *Lamay*, 89 Conn. App. 378, 384, 873 A.2d 1055, cert. denied, 275 Conn. 922, 883 A.2d 1244 (2005). "The existence of conflicting evidence curtails the authority of the court to overturn the verdict because the jury is entrusted with deciding which evidence is more credible and what effect it is to be given. . . . [O]n issues where the evidence allows room for reasonable differences of opinion among fair-minded people, if the conclusion of the jury is one that reasonably could have been reached, it must stand even though the trial court might have reached a different result." (Citation omitted; internal quotation marks omitted.) *Schettino* v. *Labarba*, supra, 450.

In reaching its decision to deny Michael Greci's motion for an additur, the court first noted that $100,000 in noneconomic damages was not an insubstantial amount. It then stated that "the evidence was conflicting as to the existence of similar physical and emotional complaints, prior to and subsequent to the accident, sufficient to raise in the minds of the jury whether the physical and emotional pain and suffering of which [Michael Greci] complained was totally caused by the injuries he sustained in the accident."

Our review of the record supports the court's conclusion. The nature and extent of his injuries, whether he would need future medical care and the impact that the claimed injuries had on his life were highly disputed issues at trial. Michael Greci currently is employed as a crew chief for Dale Earnhardt, Inc., and oversees

fourteen to fifteen race cars. He has received a promotion since the time of the accident and earns a higher salary than he received in 2003. Although he was told that he would be unable to work for four to six weeks after his surgery in 2004, he returned to his employment in three weeks. His preaccident medical records indicated that he suffered from many of the same physical and emotional complaints that he claimed were due to the accident. The neurosurgeon who had opined that the accident had caused Michael Greci's condition or exacerbated an asymptomatic condition had not reviewed Michael Greci's preaccident reports before treating him. Considering the evidence presented, the jury reasonably could have concluded that not all of the injuries Michael Greci claimed were caused by the defendant's negligence. We therefore are persuaded that the evidence presented at trial supported the noneconomic damages the jury awarded to Michael Greci and that those damages properly fall within the necessarily uncertain limits of fair and reasonable compensation.

The judgment is affirmed.

In this opinion the other judges concurred.